The People *v.* Stetson.

Same Term.    *Before the same Justices.*

The People *vs.* Stetson.

An indictment for obtaining property by false pretences need not allege that the property was of any particular value.

The statute relative to obtaining money, &c. by false tokens or pretences was not designed to protect any but innocent persons, nor those who appear to have been in any degree *particeps criminis* with the offender. It is an essential ingredient of the offence that the party alleged to have been defrauded should have believed the false representations to be true ; otherwise he cannot claim that he was influenced by them. If, in parting with his property, &c. he was himself guilty of a crime, he is not within the protection of the statute. *Per* Welles, J.

It is a well settled and rational rule that the false pretences, in order to sustain an indictment, must be such that, if true, they would naturally and according to the usual operation of motives upon the minds of persons of ordinary prudence, produce the alleged results ; or, in other words, that the act done by the person defrauded must be such as the apparent exigency of the case would di-

rectly induce an honest and ordinarily prudent person to do, if the pretences were true. *Per* Maynard, P. J.

Accordingly *Held*, on demurrer, that an indictment for obtaining a watch from a person, upon the false representation that the defendant was a constable, and had a warrant against such person, issued by a justice of the peace, for the crime of rape, and that he would settle the same if the person defrauded would give the defendant the watch, could not be sustained.

Demurrer to an indictment. The indictment was found at the oyer and terminer for Monroe county, in October, 1847. It stated substantially that the defendant, on the first of August, 1847, at Rochester, with felonious intent to cheat and defraud one Royal Barlow, feloniously, unlawfully, knowingly and designedly, falsely pretended and represented to said Barlow that he the defendant was a constable, and had a warrant issued by Butler Bardwell, Esq., a justice of the peace of said county, against said Barlow, for a rape, and produced a forged and false *instrument purporting to be such warrant;* and represented and pretended to said Barlow that said pretended warrant had been issued by said Bardwell, and then and there proposed if said Barlow would pay him $25, and also offered to settle the same, if said Barlow would deliver him a certain silver watch, the property of said Barlow. That Barlow believing the said false pretences and representations, and being deceived thereby, was induced by reason thereof to deliver and did deliver to said Stetson " one silver watch of the proper moneys, valuable things, goods and chattels, personal property and effects of the said Royal Barlow ;" which Stetson received and obtained by means of color of the pretences and false tokens and representations aforesaid, and with intent, &c. to cheat and defraud the said Royal Barlow of the said watch. Whereas said Stetson was not a constable, or any other officer, and had no warrant against said Barlow, nor had any warrant been issued by said Bardwell against said Barlow, and the instrument produced and represented to be a warrant was false and forged, which Stetson well knew ; and that the said pretences and representations were in all respects false and untrue, which was known by said Stetson. The defendant demurred to the indictment, and assigned for causes—(1.) That Barlow, in delivering the

watch to Stetson, &c. was guilty of a want of common prudence and caution, wholly inexcusable by the said false pretences and tokens. (2.) That said Barlow, in delivering the watch under the circumstances, was guilty of a want of common honesty. (3.) That the only legitimate effect of the pretences would be to make Barlow prepare to defend, to go to the magistrate where he would have been undeceived. The turning out of the watch was not the legitimate effect of the pretences. ·(4.) The watch was not obtained in the course of trade, commerce, or credit, nor in any of the lawful pursuits of business, but in the settling of a felony, &c. (5.) That no particular value of the watch was alleged. The people joined in demurrer. The case came before this court upon a writ of certiorari to the oyer and terminer, to which was returned a copy of the indictment, demurrer and joinder.

*E. A. Hopkins,* for the defendant.

*N. E. Paine,* (district attorney of Monroe county,) for the people.

WELLES, J. The formal objection to the indictment, that it does not state any particular value of the watch, is not sustained by any authority that I have been able to find. The statute under which the indictment was found does not require that the property obtained should be of any particular value—the words are, "any money, personal property, or valuable thing." There is no reason why the particular value should be alleged. There are cases where it is necessary to allege the value of the property in an indictment, where the offence, or its grade, may depend upon the value—as in an indictment for larceny—that it may appear whether the crime charged is grand or petit larceny. In the present case I think it is sufficiently alleged that the watch was a "valuable thing." The more important and difficult question relates to the substance of the offence charged; and whether the facts alleged in the indict-

ment constitute the crime of obtaining goods by false pretences under the statute. (2 *R. S.* 677, § 53.)

In addition to the special causes of demurrer, the defendant's counsel makes the following points. (1.) "That there is nothing in the false pretences showing the defendant authorized to settle the rape or the warrant therefor. Those pretences do not even indicate that the defendant was agent for the injured female. (2.) That the pretences show that the defendant had no such authority, but that his duty was to arrest Barlow, not to settle with him. (3.) The law makes such settling void, even when made with the injured person ; much more so when made with the officer executing process therefor. (4.) The watch was delivered for a void consideration, and one equally void, whether the pretences were true or false. (5.) That consideration is settling the warrant for the rape, and is not lost to Barlow in consequence of the pretences being false. As to Barlow's right under the settlement, or any benefits to him growing out of or connected with it, it is immaterial whether those pretences are true or false." The remaining points for the defendant, made upon the argument, are substantially embraced in the special causes of demurrer. A fraud, to be indictable at common law, must be such as *affects the public,* or is calculated to defraud numbers, and which ordinary care and caution cannot guard against ; as the use of false weights and measures, defrauding another under *false tokens,* or by *conspiring to cheat.* Where the fraud at common law is charged to have been effected by means of a *false token,* the token must be such as indicates *a general intent to defraud ;* a mere private token, or counterfeit letters in other mens' names does not come within the meaning of the term false token, as used at common law. (*People* v. *Babcock,* 7 *John.* 201. *People* v. *Stone,* 9 *Wend.* 182.) To obtain money by false pretences, or by private false tokens, was not punishable by the common law as a crime, however fraudulent the intent might have been. Hence the statute of 33 *Henry* 8, *ch.* 1, § 2, which is as follows : " If any person falsely and deceitfully get into his hands any money or other things of any other persons, by color of

any false token, or counterfeit letter made in any other man's name, such person being convict by witnesses taken before the lord chancellor, or by examination of witnesses or confession before the justices of assize, or before the justices of peace, in their general sessions, or by action in the courts of record, shall have such punishment by imprisonment, setting upon the pillory, or by any corporal pain, (except pains of death,) as shall be adjudged by the persons before whom he shall be convict." (*Cary's Stat. Abridged, False Tokens.*) This act of Henry 8th not meeting the case of false *pretences,* &c. the statute of 30th Geo. 2, chap. 24, which, after reciting that evil disposed persons had by various subtle stratagems, &c. fraudulently obtained divers sums of money, goods, &c. to the great injury of industrious families, and to the manifest prejudice of trade and credit, enacted " that all persons, who knowingly and designedly by false pretence or pretences, should obtain from any person or persons, money, goods, wares, or merchandises, with intent to cheat or defraud any person or persons of the same, should be deemed offenders against law and the public peace," and should be punished, &c. as therein mentioned. Our statute of 1813, (1 *R. L.* 410, § 13,) is substantially a transcript of the English statute of George 2, above recited, and the course of decision under them both has been the same. Our present statute, under which the indictment in this case was found, not only substantially combines the provisions of the English statutes of Hen. 8 and Geo. 2, but extends to the case of obtaining the signature of any person to any written instrument, &c. (2 *R. S.* 677, § 53.)

Under the foregoing statutes there have been a great number of adjudged cases, both in the courts of England and this country, among which I have met with several which were clearly within their letter, and yet have been held to be not within their spirit, or the mischief which they were intended to prevent. In the case of *The People* v. *Clough,* (17 *Wend.* 351,) the defendant was indicted for obtaining money by *false pretences.* The indictment charged that by means of certain false feigning, deceitful motives, signs and gestures, the defen-

dant gave out, represented and pretended to one A. B. that he was *deaf and dumb,* and also that he exhibited to the said A. B. a false and *counterfeit certificate,* stating that he was deaf and dumb, destitute of property, and desirous of collecting money, for the purpose of procuring an education at an institution for the instruction of the deaf and dumb, and that by such false pretences he unlawfully and fraudulently obtained money from the said A. B. There was a demurrer to the indictment which was held to be well taken, and the case made by the indictment not within the statute. Justice Cowen, who delivered the opinion of the court, admitting that the case was *within the words* of our statute, and within the enacting clause of 30 Geo. 2, chapter 24.

In *The People* v. *Williams,* (4 *Hill,* 9,) it was held that a representation, though false and made with intent to cheat and defraud the complainant, and by means of such representation, the defendant obtained the signature of the complainant to a deed of his farm, was not within the statute, unless they were calculated to mislead persons of *ordinary prudence and caution.* In the case of *The People* v. *Clough,* Justice Cowen raises the question, whether the statute was intended to protect the citizen from frauds beyond his commercial dealings, &c. He does not decide, in so many words, that its operation is to be thus limited, but in the conclusion of the opinion he says— " On the whole, we all feel quite clear that this indictment is not sustainable. We all agree that the pretence, had it been exercised in a case of *trade* or *credit,* would have fallen within the statute." He lays stress upon the recital of the statute of Geo. 2d, as showing the class of persons who were to be protected—" *industrious families,*" as the evil which it was designed to prevent, " *prejudice of trade and credit*"—and argues from the language employed in the commencement of the enacting clause—" *Therefore for the punishment of all such offenders, be it enacted,*" &c. that the offence, to be within the purview of the statute, must have been committed against a class of persons which could be indicated by or embraced within the expression " industrious persons," and must be an offence

The People *v.* Stetson.

which tends to the " prejudice of trade and credit." He then comes to the conclusion that although the crime in that case was of a very dark moral grade, yet as it was not committed against a person within the protection of the act, and more especially that it could be of no " prejudice to trade or credit," it did not come within the spirit of the act. In the above case of *The People* v. *Williams*, the indictment charged the defendant with obtaining the signature of Van Guilder to a deed of lands by falsely pretending that one Gray was about to sue him the said Van Guilder, and was also about to foreclose a certain mortgage which he then held and owned, and which was a lien on Van Guilder's farm; and that Gray would take said farm away and deprive Van Guilder of the same, and that Gray had told him, the defendant, of such intentions, &c. The court say, " Looking to the case made by the indictment, Van Guilder's only ground of complaint would seem to be, that in attempting to defraud another, he had himself been defrauded."

In all the numerous reported cases under the English and American statutes to prevent the obtaining money, &c. by false tokens or pretences, I have not found one which was held to be within the statute, in which the transaction on the part of the person injured, would not have been lawful provided the representations or pretences were true, nor where such representations or tokens, if true, were not in violation of law. I cannot believe the statute was designed to protect any but innocent persons, nor those who appear to have been in any degree *particeps criminis* with the defendant. To determine what attitude he occupies in that respect, it should be assumed that all the representations made to him, whether in words or tokens, were true, because it is an essential ingredient of the case that he believed them to be true; otherwise he could not claim that he was influenced by them. Looking at his conduct in that light, and with that assumption, if in parting with his money or property, or yielding his signature, he was himself guilty of a crime, it cannot be that he is within the protection of the statute. Testing the case under consideration by these rules,

The People *v.* Stetson.

it is impossible, in my opinion, to sustain the indictment. Barlow believed that the defendant was a constable, and had a warrant against him for a rape. He is chargeable with knowledge that the law forbade any settlement or compromise of the matter, and that it would be a misdemeanor in the defendant to neglect to execute the process. In attempting to cheat the law he has himself been defrauded of his watch.

Again; on the supposition that Barlow was innocent of the supposed charge of rape, the pretences of the defendant, and the exhibition of the supposed warrant, were not calculated to induce him to part with his property in consideration of the defendant's undertaking to do what he clearly had no right to do, and which, if he assumed to do it, the transaction was utterly void, and Barlow liable to be arrested again on the same warrant the next moment. Nor can his conduct, in my opinion, be reconciled with the exercise of common prudence or caution, on the ground that it was competent for him to buy his peace. He is not to be so absolutely stultified, as to be supposed to have parted with his watch for no valid consideration—for that which could secure him no benefit whatever—even upon the supposition that the representations of the defendant were in all respects true.

In my opinion the defendant is entitled to judgment on the demurrer.

MAYNARD, P. J. (After stating the facts:) It is a well settled and rational rule that the false pretences, in order to sustain an indictment, must be such that, if true, they would naturally and according to the usual operation of motives upon the minds of persons of ordinary prudence, produce the alleged results; or in other words, that the act done by the person defrauded must be such as the apparent exigency of the case would directly induce an honest and ordinarily prudent person to do, if the pretences were true. Applying this rule to the case in hand, it will, I think, appear that the false pretence, even if believed to be true, could not by any course of reasoning, have induced any person to do what the prosecutor did. No man

could suppose that he could procure a discharge from a warrant for felony by delivering money or goods to the officer holding the warrant. The pretence is in exhibiting a forged warrant and pretending it to be true; there is no allegation that the accused asserted that he had authority to settle it by receiving money or goods; he *offered* to do so, and the prosecutor accepted the proposal and delivered his property. It was the offer to settle the warrant which naturally produced the result, and not the supposed warrant. The conduct of the accused was in the highest degree immoral and reprehensible, but there seems to be no law to punish him, under this indictment. He may be indictable for forging the pretended warrant, if in truth he had such an one as the indictment seems to suppose.

SELDEN, J. concurred.

Judgment for defendant.

