Henry McCord, Plaintiff in error, *v*. The People, Defendants in error.

The design of the statute against obtaining money, etc., under false pretences, is to protect those, who for an *honest* purpose, are induced by false and fraudulent representations to give credit or part with their property, and not to protect those, who do this for unworthy or illegal purposes.

When, therefore, the indictment charged that the prisoner falsely or fraudulently represented he had a warrant against M., and thereby induced him to deliver up to prisoner a watch and diamond ring.

*Held*, that the property must have been parted with, as an inducement to a supposed officer to violate the laws and his duties, and the indictment could not be sustained. (PECKHAM, J., dissenting.)

(Argued November 13th, 1871; decided November 20th, 1871.)

- ERROR to the General Term of the Supreme Court in the first department to review judgment, affirming judgment of the Court of General Sessions in and for the county of New York, convicting the plaintiff in error upon an indictment for false pretences.

The plaintiff in error, Henry McCord, was tried and convicted in the Court of General Sessions of the Peace, in and for the county of New York, at the June term, 1870, upon an indictment charging in substance, that with intent to cheat and defraud one Charles C. Miller, he falsely and fraudulently represented:

" That he, the said Henry McCord, was an officer attached to the bureau of Captain John Young's department of detectives, and that he had a warrant, issued by Justice Hogan, one of the police justices of the city of New York, at the complaint of one Henry Brinker, charging the said Charles C. Miller with a criminal offence and for his arrest; and that the said Henry Brinker had promised him, the said Henry McCord, $200 for the arrest of him, the said Charles C. Miller."

And that said Miller, believing such false representations, was induced to and did deliver to McCord a gold watch and a diamond ring.

*H. C. Allen and W. T. Kintzing*, for plaintiff in error. The indictment does not set forth any offence. (*People* v. *Thomas*, 34 N. Y., 351; *People* v. *Stetson*, 4 Barb., 151; *The People* v. *Williams*, 4 Hill, 9; *The People* v. *Clough*, 17 Wend., 351; *The People* v. *Thomas*, 34 N. Y. Rep., 351; *Young et al.* v. *R.*, 3 Term R., 98; Wharton Am. Cr. Law, 2 vol., 5th ed., 2081.) The statute was only to protect from frauds in commercial dealings. (*People* v. *Clough*, 17 Wend., 351.)

*S. B. Garvin*, for the people. If any one pretence is false, to which persons of ordinary caution would give credit, it is sufficient. (*People* v. *Haynes*, 11 Wend., 557; *People* v. *Thomas*, 34 N. Y., 351; *People* v. *Hewett*, 13 Wend., 87; *People* v. *Ainslie*, 4 Den., 529.) The question is one of fact for a jury. (34 N. Y., 352; *Reff* v. *People*, 2 Parker, 139; Whar. Cr. Law, 2131.)

Per Curiam. If the prosecutor parted with his property upon the representations set forth in the indictment, it must have been for some unlawful purpose, a purpose not warranted by law. There was no legitimate purpose to be attained, by delivering the goods to the accused, upon the statements made and alleged as an inducement to the act. What action by the plaintiff in error was promised or expected in return for the property given, is not disclosed. But whatever it was, it was necessarily inconsistent with his duties as an officer, having a criminal warrant for the arrest of the prosecution, which was the character he assumed. The false representation of the accused was, that he was an officer and had a criminal warrant for the prosecutor. There was no pretence of any agency for, or connection with any person, or of any authority to do any act, save such as his duty as such pretended officer demanded.

The prosecutor parted with his property as an inducement to a supposed officer, to violate the law and his duties; and if in attempting to do this he has been defrauded, the law will not punish his confederate, although such confederate may have been instrumental in inducing the commission of the offence. Neither the law or public policy designs the protection of rogues in their dealings with each other, or to insure fair dealing and truthfulness, as between each other, in their dishonest practices. The design of the law is to protect those who, for some honest purpose are induced, upon false and fraudulent representations, to give credit or part with their property to another, and not to protect those who, for unworthy or illegal purposes, part with their goods.

(*People* v. *Williams*, 4 Hill, 9 ; *Same* v. *Stetson*, 4 Barb., 151.)

The judgment of the Supreme Court and of the sessions must be reversed and judgment for the defendant.

PECKHAM, J. (dissenting.) Although this case was tried and the defendant convicted in the court below after a plea of not guilty, he has not presented for review anything that occurred on the trial. The whole question arises upon the indictment, whether any offence is charged therein.

The review of the indictment comes up after verdict, when every defect that evidence might aid is presumed to have been cured by proof. (*Thomas* v. *The People*, 34 N. Y., 351 ; *R.* v. *Hamilton*, 9 Ad. and Ell., N. S., 271.)

It is alleged that the prisoner could not have obtained the property by these pretences, if false, unless the party gave them in settlement of a felony, and being thus guilty of a crime, the law would not listen to his complaint.

Upon this record it is the duty of this court, to presume that there was no error at the trial, if a case can be supposed where there would be none.

The charge is, that the prisoner obtained these things by these false pretences. The manner of obtaining them is not set forth, as it need not be. (*Hamilton* v. *Regina*, 9 Ad. & El., 271.) The particular crime charged against the complainant is not stated. The term "crime," when used in any statute, means any offence for which any criminal punishment may, by law, be inflicted. (2 R. S., 702, § 32.)

That is also a good definition of the word as used at common-law. (1 Bouv., 410), and cases cited.

We may say that the prisoner claimed and pretended to have a warrant against the complainant for an alleged assault and battery : was about to arrest him just at night, take him to the jail or station-house (a very uncomfortable place apart from its perils), but was willing to take this property as security for the complainant's appearance the next morning to answer the complaint, or that he represented himself as

authorized by the complainant, to settle the charge for such an amount, and the complainant herein delivered this property as security therefor. In either instance a case is made out.

The party charged may be entirely innocent. He may have been the injured and the assailed, but his adversary had him at a disadvantage. The complainant, timid and credulous, is thus defrauded out of his property. Is the prisoner in such case guilty of no crime? Is the complainant in such case beyond the pale and protection of the law?

Again, there are few men, believing that they would be locked up on such a charge, in such a place, unless they did so, who would hesitate to advance considerable property as security for their appearance in the morning. And it would be an extreme position for the courts to take, that he had thus and thereby put himself beyond the protection of the law; that the villain who had thus obtained this property with the intent to defraud, was guilty of no offence. That so far as the law could act he was a good citizen, and was obtaining his livelihood in a legal, if not in a praiseworthy manner.

It would seem to be enough, so far as such a case is concerned, to observe that no such exception, as is here sought to be taken, is found in the statute against obtaining property by false pretences; and in my judgment neither principle, authority or public policy requires the courts to insert it.

No offence would have been committed by the complainant in this case had the settlement been made as supposed.

Hence, this does not conflict with *The People* v. *Stetson* (4 Barb., 151). There the settlement of a felony was substantially alleged, showing that the complainant was guilty of a misdemeanor thereby, and in parting with his property; and hence the indictment, could not be sustained. That I believe is the only case that declares such doctrine. Many a weak and innocent man would have imitated the complainant in that case, rather than had a charge of such a character made against him before the public. In truth, the complainant in that case was guilty of no crime whatever in what he did, as

the whole thing against him was a fiction. But the principle seems to be, to hold him guilty in order to shield the villain who put him in so terrible a dilemma.

But if an offence were committed by the party defrauded in advancing the money, or would have been, if the pretenses were true, how does that discharge the offence committed in obtaining it? How absolve the offender?

This statute, it should be borne in mind, is not solely for the relief of the party defrauded. Its purpose is to punish a public offence, to punish and to prevent fraud, and to protect the weak and credulous.

Where both parties to a civil suit are equally guilty of a felony, out of which the action arises, the law refuses its aid to either. It leaves them where it finds them. This rule has no application to criminal proceedings; the complainant is no party to that proceeding. The people are the party prosecuting, not the complainant. There is no ground for that rule in a criminal case, and there is no such rule.

It would not seem to be an answer to say, that there was another offender requiring punishment.

In truth, there could be no other offender, upon the supposition that the pretences were false, that there was no warrant and no right to arrest, no offence to settle, and none, in fact, settled. The whole thing being a sham.

The statute does not except such a case from punishment. One purpose of this statute was to protect the weak and the credulous. The statute against usury was passed to protect the weak and the necessitous. Yet the latter statute could not be violated unless the complainant, the party injured, participated in the crime. No man can be guilty of usury unless some one pays, or agrees to pay it. Why should the false pretender be discharged any more than the usurer, because another participated in the crime?

The Supreme Court of this State, I say it with great respect, once put an exception in our statute not placed there by the legislature; that a false pretence, whereby charity was obtained, was not within the meaning of the statute, though

plainly within its language. It seems to be settled the other way in *England R.* v. *Jones* (T. & M., 270). (4 New Sess. Cas., 353; 1 Den. C. C., 551; 3 C. & K., 346; 14 Jur., 533; 19 L. J. M. L., 162; 4 Cox C. C., 198.)

The recital preceding the English statute, that evil disposed persons had obtained goods by false pretences, "to the great injury of industrious families, and to the manifest prejudice of trade and credit," was referred to as showing that only trade and commerce were sought to be protected, and their invasion only were within the denunciation or penalty of the act, though this recital was never adopted here. (*The People* v. *Clough*, 17 Wend., 351.)

This made it necessary for the legislature to strike this exception out again, and they did so by an act passed in 1851. (Laws of 1851, p. 268.) Now the act in terms applies to all, the virtuous and the vicious, to "industrious," and to idle families alike.

The law is well settled, that if A assault B and knock him down without any excuse; yet if B should then beat A in an outrageous manner, he would be liable even to a civil action, though A had first committed a crime in the first assault.

If the law would allow a civil remedy to a person thus confessedly guilty of crime in making an unprovoked assault, would it not permit an offender against the public, the false pretender, to be punished for the public offence? Although, if the pretences had been true, he would have induced another, also, to commit an offence in advancing the money.

This indictment, as before stated, is not merely to protect or relieve this party cheated, but to protect the public against such a criminal. If the other party had committed a crime, there would be no objection to punish him also. (*Com.* v. *Morrill*, 8 Cush., 571.)

An indictment, much like the one at bar, was sustained in the Supreme Court of Pennsylvania. It was at first quashed in the lower court; but on review, was sustained in an opinion of Judge Woodward. (*Carn.* v. *Henry*, 10 Harris, 253.)

There the indictment charged, that the prisoner claimed to have a warrant for the arrest of the complainant's daughter, for an alleged crime punishable by fine and imprisonment; and that he threatened to arrest her, and thus obtained the property of her father. The complainant was held to be within the protection of the law, and the indictment sustained.

The false pretences in this case are within the plain language of the statute. The offence is committed, and I do not think the complainant has done any act to discharge it or to put himself beyond the law's protection. I am, therefore, against a repeal of the statute, and for affirming the conviction.

For reversal, CHURCH, Ch. J.; ALLEN, GROVER, FOLGER and RAPALLO, JJ.

For affirmance, PECKHAM, J.

Judgment reversed.