.PEOPLE v. KOLLER.

(Supreme Court, Appellate Division, First Department. December 7, 1906.)

FALSE PRETENSES—OBTAINING LOAN—DEFENSES—USURY.

On prosecution for larceny in obtaining a loan by false representations, it was no defense that the contract for loan was usurious.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, False Pretenses, §. 27.]

Appeal from Court of General Sessions, New York County.

Samuel Koller was convicted of grand larceny, and appeals. Affirmed.

Argued before McLAUGHLIN, INGRAHAM, HOUGHTON, CLARKE, and SCOTT, JJ.

Isaac N. Jacobson, for appellant.
Robert S. Johnstone, for the People.

INGRAHAM, J. The evidence upon which this conviction was obtained was as follows: One Simons, the complainant, testified that on the 14th of June, 1903, he went with a companion to the defendant's house on a social call. While there the defendant came in. That the defendant expressed regret that he had been unable to obtain some money, saying to the witness, "I offered good security for it, but I was disappointed I did not get it." The witness then said as long as defendant could give good security he might make the loan. The defendant then said:

"Why my daughter owns a lot up in 172d street, on the north side of the street, beginning 100 feet west of Amsterdam avenue, and she owns that free and clear, and I offered that as security." ·

Upon this statement the witness agreed to make the defendant a loan of $300. The defendant then said that he must have the money right away, but the witness said that he must have the title of the property searched first, to which the defendant said:

"I have a Title Insurance Company policy from the Title Guarantee & Trust Company."

Whereupon the witness stated:

"As long as you have a Title Insurance Company policy on that property, I am satisfied to make you the loan."

The next day the parties went to the office of a real estate broker, when the complainant's attorney was sent for. He sent to the register's office to see if there was a conveyance to the defendant's step-daughter, and such a conveyance was found. The parties then went to the attorney's office, where a bond and mortgage was drawn up and executed by the defendant's stepdaughter, whereupon the complainant gave to the defendant a check for the $300. At the time the attorney wanted the sum of $49.34 for the expense of examining the title, preparing the bond and mortgage and seeing that they were recorded. The defendant said that he did not have the money, and the complainant offered to pay the money and add that amount to the loan, which the defendant accepted. The attorney advised the complainant not to make the loan, when the defendant repeated the statement that he had the title to the property insured by the Title Guarantee & Trust Company. The complainant swore that he relied on the statement that the defendant's stepdaughter had the title to the property free and clear of all incumbrances which had been insured by the Title Guarantee & Trust Company. The check was produced indorsed by the defendant. A week afterwards the attorney told the complainant that the title was no good, and when the complainant saw the defendant the defendant said he would make restitution of the money in a few days, and he subsequently returned the money ($300) to the complainant. This testimony was corroborated by the plaintiff's attorney, who testified that the defendant told him that he needed the money right away, and that the title to the propery had been examined by the Title Guarantee & Trust Company; that it was free and clear of everything; that the time of such examination had been so recent that the policy had not been issued yet; that the $49.34 represented the costs of drawing and recording the papers and searching the title, and that the charge of $49.34 was for those services and paid to him. It also appeared that there was a deed on record of one Vendevorst to Conway, who had conveyed to the defendant's stepdaughter. There was then called an officer of the Title Guarantee & Trust Company, who testified that shortly before the 15th of June the defendant came to the office of that company with a broker; that he showed the deed of this property, and stated that he was troubled about his title, as somebody had raised the question as to whether his title was good; that the

witness examined a memorandum of conveyances in reference to the property and told the defendant that he had no title. The defendant told the witness that he had exchanged stock for the property, and the witness then·said he had better go to his lawyers as fast as he could and get back his stock. The witness further testified that the Title Guarantee & Trust Company had never issued any policy of insurance on this title, and up to the time of this transaction had made no examination of it. Although the defendant was not examined as a witness, testimony was offered on behalf of the defendant to show that this contract was usurious; the lender having been paid $30 for making the loan. This evidence was denied both by the complainant and his attorney. Counsel for the defendant then requested the court to charge that, if the jury believe that an agreement was made between the complainant and the defendant that the defendant should pay the sum of $30 for the use of $300 for one month, the contract was void and that was charged.

Counsel for the defendant then asked the court to charge that, if the jury believe that such contract was made between the complainant and the defendant, the transaction was unlawful in its inception, and the jury must acquit the defendant. This was declined, and to that the defendant excepted; and this latter exception presents the only substantial question in the case. The counsel for the defendant on this appeal relies upon the case of McCord v. People, 46 N. Y. 470. In this case the plaintiff in error was tried and convicted of obtaining money under false pretenses. It was held by the majority of the court that:

"If the prosecutor parted with his property upon the representations set forth in the indictment, it must have been for some unlawful purpose, a purpose not warranted by law. There was no legitimate purpose to be attained by delivering the goods to the accused upon the statements made and alleged as an inducement to the act. * * * The prosecutor parted with his property as an inducement to a supposed officer to violate the law and his duties; and, if in attempting to do this he has been defrauded, the law will not punish his confederate, although such confederate may have been instrumental in inducing the commission of the offense. Neither the law or public policy designs the protection of rogues in their dealing with each other, or to insure fair dealing and truthfulness, as between each other, in their dishonest practices."

It is quite apparent that the principle there established has no application to the case at bar. The representations were not made and the money paid by the complainant for the purpose of or an inducement to violate the law. The defendant endeavored to obtain a loan of money from the complainant, and made representations as to the security that he offered to obtain the loan, and relying upon such representations, which were false and fraudulent, the plaintiff gave defendant the money. The fact that the loan was void because the complainant exacted a sum of money in excess of the legal rate of interest was no defense to a charge that the money was obtained by the defendant by false representations. The crime consists in obtaining the money in a manner which the statute makes larceny. Whether the person from whom the money was obtained could or could not have recovered it back is entirely immaterial.

There are questions of evidence presented, but I do not think that they require discussion.

Judgment should, therefore be affirmed. All concur.