## COUNTY COURT—ONEIDA COUNTY.
### June, 1907.

## THE PEOPLE v. CHARLES A. KLOCK.

#### (55 Misc. 46.)

GRAND LARCENY—FALSE REPRESENTATION—CODE CRIM. PRO. § 410.

> One who pays money to a State game protector for logs cut on State lands constituting part of the forest preserve is chargeable with knowledge of the want of authority in the game protector to receive it, and the latter's assertion of his right to do so is not a fraudulent representation of a fact for which he can be indicted for grand larceny.

MOTION under section 410 of the Criminal Code to advise jury to acquit defendant.

E. M. Willis, District Attorney (John K. Ward, of counsel), for people.

A. B. Steele (Josiah Perry, of counsel), for defendant.

PRITCHARD, J. The defendant is indicted for grand larceny in the first degree by false representation.

At the close of the people's case, the defendant moved for advice to the jury to acquit, under section 410 of the Code of Criminal Procedure, on the following grounds:

*First.* There is no evidence of any false pretenses or false representations made by the defendant to Gallagher to induce, or that might tend to induce Gallagher to part with his money —the $3,750—and in each instance where I refer to the money I mean that amount.

*Second.* There were no false or fraudulent representations made by the defendant Klock, either directly or indirectly, that were believed or relied upon by Mr. Gallagher that induced him to part with his money.

*Third.* The money in question was paid by Mr. Gallagher for an illegal purpose, namely, to get from the State of New York property which it was unlawful for the State to sell or in any manner dispose of.

*Fourth.* The money in question was paid to have and induce the defendant to do or to omit to do an illegal and unlawful act.

*Fifth.* The money was paid to have the defendant or the Forest, Fish and Game Commission, and I might specify Major Pond, to do or omit to do an illegal and unlawful thing or act.

*Sixth.* The money in question was paid to induce Klock not to perform his duty as game protector or to arrest and prosecute Gallagher.

*Seventh.* The money, represented by the receipt upon which the indictment was found, was paid for the purpose of doing a thing or inducing or bringing about the doing of a thing that was illegal and improper.

*Eighth.* The money in question was paid by *particeps criminis* for the purpose of completing a transaction to defraud the State of New York.

*Ninth.* The money in question was paid by Gallagher to the defendant to complete an illegal and unlawful transaction, namely, to deprive the State of New York of logs and timber.

*Tenth.* Gallagher voluntarily parted with his money; and, under the decisions and law of this State, no crime was committed.

*Eleventh.* Upon all the evidence in this case, there is no crime committed or shown to have been committed by Klock, the defendant.

This case is of such importance that I deem it my duty to give at length the reasons for the position I take in it. The difference between the people and the defendant is whether or not the presumption of law is conclusive or whether Gallagher can be heard to say that he did not know the provisions of the law, but relied upon the practice of the department theretofore,

and relied upon the power and efficacy of the receipt given by the defendant to him when he parted with his money. In other, words, it depends upon the strength of the legal presumption and how far that goes, and I have made a careful examination of this subject along those lines. We start in with the Constitution of the State of New York, article 7, section 7, which says: ' The lands of the State now owned or hereafter acquired, constituting the forest preserve as now fixed by law, shall be forever kept as wild forest lands. They shall not be leased, sold or exchanged or be taken by any corporation, public or private, nor shall the timber thereon be sold, removed or destroyed."

Section 222 of the Forest, Fish and Game Law, as amended by Laws of 1905, and in effect April 22, 1905, provides: " Foresters, inspectors, game protectors and fire-wardens shall upon the discovery of a trespass upon the forest preserve forthwith report the same in writing to the superintendent of forests. They shall have the power to arrest without warrant any person detected in trespassing on lands of the forest preserve, and to take such person immediately before a magistrate having jurisdiction for trial, and they shall report such action to the superintendent of forests.

" Actions may on the order of the commissioner be maintained in the name of the People through special counsel whose compensation shall be fixed by the commission to recover damages for trespass or waste on lands in the forest preserve, or to prevent trespass or injury thereto, with relief by temporary or final injunction, or to recover possession of lands belonging to the State within the forest preserve. Moneys recovered in such an action shall be paid to the commission, which after paying the expenses of collection, shall pay to the game protector or fire-warden upon whose information the action was brought fifty dollars, or if the net balance be less than one hundred dollars, one-half thereof.

" A person who cuts or causes to be cut or carries away or

causes to be carried away any tree, timber, wood or bark from State lands in the forest preserve is guilty of a misdemeanor; he shall also be liable to a penalty of ten dollars for each tree cut, taken away or destroyed by him or under his direction. The penalty so incurred may be recovered in the action to recover damages for trespass or in a separate action."

" § 216. Forest Preserve.—The forest preserve shall include the lands now owned or hereafter acquired by the State within the county of Clinton, except the towns of Altona and Dannemora, and the counties of Delaware, Essex, Franklin, Fulton, Hamilton, Herkimer, Lewis, Oneida, Saratoga, St. Lawrence, Warren, Washington, Greene, Ulster and Sullivan, except

" I. Lands within the limits of any village or city, and

" 2. Lands, not wild lands, acquired by the State on fore-closure of mortgages by loan commissioners."

There is evidence in the case as it now stands that James Gallagher paid $3,750 in cash to this defendant, who, with Harvey N. Gaylord, signed a receipt of which the following is a copy:

" FORESTPORT, N. Y., *Aug.* 13, 1905.

" Received of James Gallagher $3,750.00 for logs cut on lots 6, 7, 8, 9, 10 and 19, New Survey, Nobleboro Patent.

" CHARLES A. KLOCK,
" *State Game Protector.*
" H. N. GAYLORD,
" *State Game Protector.*"

Although this receipt is dated August 13, 1905, it in fact was made and delivered to Gallagher July 25, 1905. At the time of the delivery of a similar receipt to Albert Herrig, the night before, the defendant, Charles A. Klock, stated in the presence of Gallagher that it was just as good and effective as if given by the commissioner himself. This is substantially the only representation made by the defendant Klock to Gallagher.

Harvey N. Gaylord, who was present at that interview, stated that he did not believe it was worth a damn and, as he thinks, read section 222 of the Forest, Fish and Game Law; but, notwithstanding this, Gallagher the next morning paid his money and took the receipt.

It further appears from the evidence that no part of this money ever reached the proper authorities.

From the Constitution of the State and from section 222 of the Forest, Fish and Game Law, it appears that the defendant Klock had no right to sell said timber or to take the money, as the lots mentioned in the receipt were within the forest preserve.

There is a legal maxim that, " Everyone is presumed to know the law," and also that, " Ignorance of the law does not excuse."

The determination of this motion depends on whether or not this maxim applies to Klock and Gallagher in this case.

These maxims are long established and are recognized by text writers and by the courts of this State.

Bishop, in his Criminal Law, section 294, in speaking of this maxim, says:

" The rule under this sub title, unlike the next, is arbitrary—compelled by necessity, the great master of all things. Without it justice could not be administered in our tribunals. It is in general that every person is presumed to know the laws of the country wherein he dwells, or wherein, if residing abroad, he transacts business. And within limits not well defined, this presumption is conclusive. Its conclusiveness comes from necessity, as just said, or as it is sometimes laid down from consideration of public policy beyond which it cannot extend, though the authorities do not show precisely how broad is the foundation of the policy. Yet it is safe to state that in neither criminal nor civil cause in any circumstances can any one justify his act by the naked showing that when he did it he did not know the existence of the law he violated. Nor even in general is the

excuse valid that he endeavored to ascertain the law and was misled by advising counsel. '*Ignorantia juris non excusat*' is, therefore, a rule in our jurisprudence as in the Roman whence it is derived."

Best on Evidence says, in section 45: "We will merely add one other instance which places this matter in the strongest light. If the abstract question were proposed: 'What is the most unjust thing that could be done?' the answer probably would be, 'The punishment of a man for disobeying a law with the existence of which he was not acquainted.' And yet that must constantly occur everywhere; there being no rule of jurisprudence more universal than this, that every person in a country must be conclusively presumed to know its laws sufficiently to be able to regulate his conduct by them. '*Ignorantia juris quod quisque tenetur scire neminem excusat.*'

"Hard as this may seem it is indispensably necessary in order to prevent infinitely greater evils; for the allowing violations of the criminal, or contraventions of the civil code, to pass without punishment or inconvenience, under the plea of ignorance of their provisions, would render the whole body of jurisprudence practically worthless. If none were amenable to the laws but those who could be proved to be acquainted with them, not only would ignorance be continually pleaded, in criminal cases especially, but persons would avoid acquiring a knowledge which carried such perilous consequences along with it."

Wigmore treats this as a rule of substantive law rather than of evidence. See § 2490 *et seq.*

Greenleaf on Evidence, section 20, volume III, says: "If a criminal act is done through mistake or ignorance of the law it is, nevertheless, punishable as a crime. Ignorance of the municipal law is not allowed to excuse anyone who is of the age of discretion and *compos mentis,* from the penalty for the breach of it, for every such person is bound to know the law of the land regulating his conduct, and he is presumed so to know.

' *Ignorantia juris quod quisque tenetur scire neminem excusat* ' is a maxim of law recognized from the earliest times, both in England and in the Roman Empire."

Such is the tenor of text writers. The maxim is also discussed by the courts in the following cases which show its application to a variety of transactions.

Chancellor Kent, in *Lyon* v. *Richmond*, 2 John. Ch. 51, 60, says: "The courts do not undertake to relieve parties from their acts and deeds fairly done on a full knowledge of facts though under a mistake of the law. Every man is to be charged at his peril with a knowledge of the law; there is no other principle which is safe and practicable in the common intercourse of mankind." January 15, 1816.

In *New York Cent. Fire Ins. Co.* v. *Kelsey*, 13 How. 535, when notice of trial was for wrong date, Justice Hubbard said: "The time of the commencement of the circuit in Otsego or in any other county of the state is a part of the public law and must be presumed to be known by all."

In *Hamilton* v. *People*, 57 Barb. 625, the defendant was arrested for misdemeanor for illegal voting, he having been theretofore convicted of felony and not pardoned. On trial, defendant offered to prove that he had a letter from the Governor of the State in answer to his request for pardon, stating that, inasmuch as he was a minor when convicted and discharged, he consequently did not lose his right of citizenship, and that he was given the same advice by attorneys. The evidence was excluded. *Held* not error.

Potter, J., in an exhaustive opinion, says: "It would be difficult for the court to lay down a rule applicable to one misdemeanor, or to a class of misdemeanors, in which ignorance of the law would be a defense, that should not extend to all; or to draw a line between the cases where it might be an excuse, and where not. No such distinguishing line has been attempted on the argument; the books furnish none. No one would dare to

say this defense could be used as to offenses *mala in se*. What distinction, then, could be found among those that are *mala prohibita?* It would seem absurd for a person indicted for selling intoxicating liquors to be allowed to prove his ignorance of the offense; so for selling lottery tickets, horse racing, for violation of the Sabbath, for cruelty to animals, etc. Nor would he be excused, should he prove that even counselors at law had advised him that he might do all these things."

In *People* v. *Weed,* 29 Hun, 628, May, 1883, Barnard, Justice, says: "The prisoner was indicted for bigamy. The offense was clearly proven. The prisoner married one Louisa Bryson, in Westchester county in this State, in 1875, and he again married one Carrie Megol in May, 1881, in Westchester county. Louisa Bryson was at the date of the second marriage and is yet living. It was proven upon the trial that, before the second marriage, the prisoner and his wife signed articles under seal, in Connecticut, that if either party should apply for a divorce the other would not oppose the application and would not appear against the petitioning party. A question was put by the prisoner's counsel to him whether the justice of the peace in Connecticut, who witnessed the paper, did not tell him that the paper was in legal effect a divorce. The same question was put to another witness to the paper. These questions were overruled and an exception taken to the decision. This presents the only question in the case. We think it was not an erroneous ruling. The general rule is that all are presumed to know the law, and that ignorance of the law excuses no one from crime. The particular crime alleged was fully made out. The two marriages were understandingly entered into by the prisoner, with full knowledge of the facts which, by statute, establishes the offense. The prisoner, when he married the second time, knew that his first wife was still living. Neither the deputy sheriff who drew the paper nor the justice who read it over could destroy the

effect of an intentional violation of a statute, by advice that such violation could be lawfully done.

" The conviction, therefore, should be affirmed.

" Dykman and Pratt, JJ., concurred.

" Conviction affirmed."

In New York Fire Department v. Buhler, 35 N. Y. 117, an action for a penalty for putting up any wooden building other than a dwelling-house, one of the firewardens saw the structure in building, but did not object. Held, that that did not justify the defendant, as he must be guided by the law which he was presumed to know.

The charge against the defendant in this case is larceny from Gallagher by false representation.

The act which he did and which constitutes the crime was illegal and in violation of the Constitution and of the law. The defendant knew this, presumptively, if not actually, and he is bound by the presumption. He cannot be heard in his defense to say that he did not know it, and he cannot say that former practice of the department justified him.

If the defendant on trial for his liberty is so effectively bound by this presumption, can it not be said that Gallagher is also as effectively bound by it. I am of the opinion that the legal presumption conclusively binds both.

This conclusion brings the case within the principles reiterated in *People* v. *Tompkins,* 186 N. Y. 413. There it is held that " The rule, that when a person is induced either by trick or device or false representations to part with his property for an illegal purpose, a conviction cannot be had of the person charged with the offense, is firmly established in this state and cannot be changed by the courts without ignoring constitutional rights and usurping legislative power."

In *People* v. *Livingston,* 47 App. Div. 285, the court says: " We venture to suggest that it might be wise for the Legislature to alter the rule laid down in *McCord* v. *People.* If the rule

as to larceny by false pretense and by trick or device, were made the same as the common-law rule that stealing property from a thief is the same crime as stealing it from the true owner, we think this class of cases might be much more successfully dealt with. We know that a feeling prevails to some extent in the community that it is unjust that one offender should be punished and his co-offender obtain immunity. This feeling is absolutely unreasonable. Where one offender is punished and another escapes, there may properly be a feeling of dissatisfaction, but the dissatisfaction should not be because one man is in prison, but because the other man is out."

This is quoted and emphasized in the Tompkins case.

I had at one time thought that the proper course for me to pursue in this case was to let it go to the jury and, in case of a verdict of " guilty," grant an order in arrest of judgment, and thus give the people an opportunity to appeal; but, having the firm conviction that I have as to the law, what would I say to the jury? I would have to instruct the jury that the law was entirely different from what I believe it to be. This would be unjust to the defendant and unfair to the jury and to myself; and the Appellate Division and the Court of Appeals have evinced a disposition not to distinguish in avoidance of this rule but lay the matter at the doors of the Legislature.

Now, gentlemen of the jury, I have determined to grant Mr. Steele's motion to advise you to discharge this defendant for the reason that, in my opinion, there is not sufficient evidence to justify his conviction as a matter of law.

Motion granted.