Benjamin E. Lander, J.
The defendant is charged with committing the offense of issuing a bad check in violation of section 190.05 of the Penal Law in that for the period from April 11, 1973 to May 30, -1973, he -allegedly issued seven -checks in the total aggregate amount of $33,250; that, upon being deposited, six of these checks were returned for “ insufficient funds ” and the other was marked ■“ account closed.”
The instant criminal action was initiated in the Summons Part -and 'assigned for trial to be held -on September 14,1973. On that d-ate, in Part AP17, the court granted an adjournment in contemplation of dismissal pursuant to CPL 170.55. However, on March 4,1974, upon the application of the District Attorney, xthe action was restored to the calendar, and it came to trial on October 1, 1974.
The facts of this case are as follows:
The complainant, one Theodore Weiner, made a loan to the defendant in the sum of $10,000 by check dated February 23, 1973 ¡and received, in exchange, a promissory noté payable on March 9, 1973. The note not having been paid, the defendant *997 issued a .check ¡to the complainant, dated April 11, 1973, in ¡the sum of $7,250, presumably as partial payment of the loan. Upon the failure of this check to clear due to “ insufficient funds” after deposit and redeposit, the defendant gave Weiner a replacement check for the same amount, dated April 18,1973, which was also dishonored for ‘‘ insufficient funds.”
The two afore-mentioned checks, as well as others subsequently issued by the defendant, were drawn on corporate accounts, the defendant acting as “ representative drawer” as defined by subdivision 3 of section 190.00 of the Penal Law, and it is clear that the defendant had authority ¡to ¡sign the checks.
The complainant testified that on or about May 1, 1973, the defendant asked the complainant for an additional $6,000 loan, the money to go toward the purchase price of two cars. Weiner stated that while he was unable to .raise the requested $6,000, he did get together $5,900, which he then delivered to the defendant. Thereafter, the defendant issued four checks to Weiner, each in the amount of $3,437.50. Two of the checks were dated May 4, 1973 and two May 7, 1973. Although the dates on three of the checks were altered, they were all deposited on May 4, 1973 and returned with a notation of “ insufficient funds.”
On May 24,1973, the defendant gave the complainant a promissory note for $15,900, payable ¡on demand, which apparently represented the original loan of $10,000 plus the $5,900 allegedly lent by Weiner .to the defendant on or about May 1, 1973. In addition, the defendant agreed ‘ ‘ to pay all interest charges from this date and to the date of payment in full. ’ ’ The defendant, however, denied that he ever received any money from the complainant other than the initial loan of $10,000, so that the difference between that .amount ¡and the $15,900 specified in the note would .supposedly be the interest owed.
The final ¡check at issue here was dated May 30,1974 and was made out ,to Wéiner for the ¡sum of $3,000. It was subsequently returned marked “ account closed.” The complainant testified that each of the checks, with the exception of the two on May 7, 1973, was dated on the day of delivery. Although the defendant contended that the checks were postdated, the court, after having considered all the evidence and drawn therefrom such inferences as are reasonable and proper under the circumstances, concludes ¡that the checks at issue were not, in fact, postdated. Further, the defendant’s argument that he had received authority from the bank to draw on funds beyond those present in his account is also rejected. The evidence elicited at the trial does *998 not support the defendant’s claim that he had a reasonable expectation of payment due to an understanding with one of the bank’s officers.
The defendant asserts that the instant ¡action was erroneously restored to the calendar after the adjournment in contemplation of 'dismissal, without prior notice having been given to the defendant for the purpose of opposing the District Attorney’s application. He also states ¡that a civil action instituted by the complainant in the Supreme Court before the commencement of the present prosecution constitutes an election which bars the criminal proceedings and that, in any event,, the loan made by .'the complainant is usurious, Weiner having charged $2,250 per month interest, and that this is a defense to the instant action against him.
GPL 170.55 (subd. 2) provides that upon “ application of the people, made at any time not more than six months after the issuance of ¡such order, the court must restore the case to the calendar and the action must thereupon proceed.” An extensive discussion of the question whether a defendant is entitled to a prior hearing before the court restores a case to the calendar can be found in People v. Hurt (78 Misc 2d 43). In that ease, the defendant was arrested and charged with a misdemeanor. An adjournment in contemplation of dismissal was granted pursuant to GPL 170.55. That same day, the court, in response to the District Attorney’s application, restored ¡the case to the calendar. The court, in People v. Hurt, held that the use of the word “must ” in GPL 170.55 is mandatory, not directive, and that the court is required to restore the case to the calendar on the application of the People. Further, the court stated, the defendant is not entitled to a prior hearing on .the issue, since by vacating the adjournment in contemplation of dismissal (ACD) and restoring the case, no substantial interest of the ^defendant is affected, nlor is there any violation of his Fourteenth Amendment rights.
This court holds the same view. The wording of GPL 170.55 is clear. The court must, upon application of the People, restore the case to the calendar. There is no discretion here for the court to do anything else. Consequently, the defendant’s contention that ¡the ACD in the instant case was erroneously vacated has no merit.
The defendant ¡also contends that the initiation of a civil suit against him by the complainant prior to the commencement of criminal proceedings bars the current prosecution. There is absolutely no .authority for this claim. Generally, a judgment *999 in a criminal case is no bar to a subsequent civil action based on the same facts. (Dalton v. Van Dien, 72 Misc 2d 287; Cooper v. Mallory, 51 Misc 2d 749; City of New York v. Carolla, 48 Misc 2d 140; William Reilly Constr. Corp. v. City of New York, 70 Misc 2d 651, affd. 25 A D 2d 953; Man Radio & Elecs, Ltd. v. Von Cseh, 12 Misc 2d 435, app. conditionally dsmd. 7 A D 2d 983, affd. 9 A D 2d 650; and Sanders v. Sanders, 178 Misc. 720.)
Similarly, a civil action does not bar a criminal prosecution. (People v. Topping Bros., 79 Misc 2d 260; People v. Hacker, 76 Misc 2d 610; People v. Gibbs and Cox, 74 Misc 2d 242; City of Buffalo v. Till, 192 App. Div. 99; and People v. Snyder, 90 App. Div. 422.) Section 190.05 of the Penal Law is a criminal statute whose violation constitutes a misdemeanor and conviction upon which carries with it certain criminal penalties. What is involved here is not a financial debt which one private individual asserts is owed him iby another, as is the subject of the civil action instituted by Weiner against the defendant, but a law which creates a duty to the People of the State of New York and which is prosecuted in the name of the People, regardless of the fact that Weiner, the plaintiff in the civil action, also happens to be the complainant in the instant proceeding. The function of the criminal court is not to provide merely another alternative for the collection of personal debts, but rather to enforce the criminal statutes. Therefore, this court rejects the argument that by instituting a civil suit, the complainant elected his remedy and could not thereafter file a criminal complaint against the defendant.
Moreover, the defendant asserts that the acceptance by the complainant of replacement checks and promissory notes in lieu of .the checks bars the defendant’s criminal prosecution. Once again, .the defendant is confusing the function of a civil action with that of a criminal proceeding. Whatever may be the effect of this claim on the complainant’s attempt to recover his loan civilly, the fact that the complainant took replacement checks and promissory notes is irrelevant to a determination of the defendant’s guilt or innocence of the offense charged. It is the State of New York rather than the complainant who is prosecuting the present action.
As .to the issue of usury which has been raised in connection with this case, the evidence offered at trial is contradictory on the question of whether the financial transaction between the parties was, in fact, usurious. However, since the defense of usury has been made, this court will consider the matter. *1000 Although the crime of misbehavior of one person has generally been held not to excuse the crime of another, there has been some dispute ¡as to the applicability of this principle in prosecutions based upon false representations, as in false pretenses, swindling, confidence games, cheating, larceny by trick, etc. This' has apparently been due to the .reluctance of courts to extend their protection to persons engaged in fraudulent schemes, particularly where the two parties involved are both more or less equally at fault. Nonetheless, -the majority view in the United States has traditionally been that the fact that the purposes of the defendants’ victims were themselves immoral or unlawful was not an acceptable defense. New York, however, regardless of ¡the great preponderance of authority to the contrary, was one of the few iStates that at -one time adopted the minority view.
The early leading cases in New York accepted the position that indictments against ¡the defendants were not sustainable in the face of illegal, immoral or fraudulent action on the part of their victims. (People v. Clough, 17 Wend. 351; People v. Williams, 4 Hill 9; People v. Stetson, 4 Barb. 151; and McCord v. People, 46 N. Y. 470.) In People v. Stetson (supra, p. 157) the court stated that it could not‘ believe the statute [relating to obtaining money, etc. by false pretenses] was designed to protect ¡any but innocent persons, nor those who appear to have been in ¡any degree particeps criminis with the defendant.” The court, in McCord v. People (supra, p. 472) asserted ¡that neither ‘ ‘ the law or public policy designs the protection of rogues in their dealings with each other, -or to insure fair dealing and truthfulness, as between each other, in their dishonest practices. The design of the law is to .protect those who, for some honest purpose are induced, upon false and fraudulent representations, to give credit or part with their property to another, and not to protect ¡those who, for unworthy or illegal purposes, part with their goods.”
Subsequently, in People v. Livingstone (47 App. Div. 283), People v. Tompkins (186 N. Y. 413.) and People v. Klock (55 Misc. 46), the courts, when confronted with this issue, regretfully felt compelled to follow the ¡authority of People v. Stetson (supra), McCord v. People (supra), and the other early cases, since ¡the rule therein enunciated was, in their view, firmly established in .State precedent. They suggested, however, that it might be wise for ¡the Legislature to alter that rule, of which they expressed disapproval.
*1001 In 1907, the State Legislature enacted the following provision:
‘ ‘ Hereafter it ¡shall not be ia defense to a prosecution for larceny, or for an attempt or for conspiracy to commit the same, or for being 'accessory ¡thereto, that the purpose for which the owner was induced by color or 'aid of fraudulent or false representation or .pretense, or of .any false token or writing, to part with his property or the possession thereof was illegal, immoral or unworthy.” (L. 1907, eh. 581, § 1, iamdg. § 528 of the Penal Code of 1881.)
This section was succeeded by section 1290 of the Penal Law of 1909, which was repealed by section 2 of chapter 732 of the Laws of 1942, and new section 1290, and section 1290-a were inserted. The new section 1290 stated: ‘ ‘ Hereinafter it shall be immaterial in, and no defense to, a prosecution for larceny that: .
“ 1. The accused obtained possession of, or title to, such property with the consent of the person from whom he obtained it, provided ¡he induced such consent by a false or fraudulent representation, pretense, token, or writing; or
“ 2. The accused in the first instance obtained possession of, or title to, ¡such property lawfully, provided he subsequently wrongfully withheld or appropriated such property to his own use or the use of any person not entitled to the use and benefit of such property; or
“ 3. The person from whom the accused obtained such property intended to part with title to, as well as possession of, such property, or with possession as well as title; or
‘ ‘ 4. The purpose for which the owner was induced to part with possession of such property was immoral or unworthy.”
Certainly, the Legislature was aware of the common-law rule in New York when it enacted' the afore-mentioned provisions, thereby superseding the holding of People v. Stetson (4 Barb. 151, supra), McCord v. People ,(46 N. Y. 470, supra), and the other cases. There are no further reported cases on the subject in New York subsequent to 1907, when the law was changed, after which it appears that the defense of particeps criminis could no longer be urged successfully in criminal prosecutions. This is clearly the situation now despite the fact that the cited portion of section 1290 of the Penal Law of 1909 has no parallel provision in the present Penal Law.
However, even prior to the 1907 legislative amendment, the court in People v. Koller (116 App. Div. 173, affd. 187 N. Y. 572), in the only case dealing specifically with the question of usury, rejected that defense. According to the court (p. 176):
*1002 “ The defendant endeavored to obtain a loan of money from the -complainant and made representations as ito the security that he offered to obtain the loan, and relying upon such representations which were false and fraudulent, the plaintiff gave defendant the money. The fact that .the loan was void because the complainant exacted a sum of money in excess of .the legal rate of interest, was no defense to a charge that the money was obtained by the defendant by false representations. The crime consists in obtaining the money in a manner which the statute makes larceny. (See Penal Code, §§ 528, 531.) Whether the person from whom the money obtained could or could' not -have recovered it hack is entirely immaterial.”
Thus People v. Koller (supra) was decided at the time the old common-law rule as to particeps crimmis was still in force, thereby indicating that the court did not consider .the defense of usury in connection with a criminal prosecution to involve precisely the same issue. This court is in agreement-with .the reasoning applied in that case. In the instant prosecution, it is irrelevant whether or -not the complainant is entitled, in a civil action, to recover his loan to the defendant. Section 190.05 of the Penal Law states that a person is guilty of issuing a bad check when ‘ ‘ 1. (a) As a drawer or representative drawer, he utters a check knowing that he or his principal, as the case may be, does not then have .sufficient fund's with the drawee to cover it, and (b) he intends o.r believes at the time of1 utterance that payment will be refused by the drawee upon presentation, and (c) payment is refused by the drawee upon presentation ”. Whether or not the underlying loan is usurious is quite beside the point, since the defense itself is inapplicable to a criminal proceeding.
Consequently, the defendant’s motion to dismiss is denied in full, and all motions made in the course of the trial and upon which decision .was reserved are hereby denied. Defendant is convicted of the charge.