Maurice W. Grey, J.
This is an application by defendant for leave to reargue a prior decision of this court granting a motion, made by the People, for an order vacating and setting aside a prior adjournment in contemplation of dismissal pursuant to CPL 170.55.
Defendant was arrested on November 1,1973, charged with the violation of section 205.25 of the Penal Law, introducing contraband into a detention facility. On November 14, 1973 the case appeared on the ID Calendar and on motion of the Assistant District Attorney, the charge was reduced to section 205.20 of *44 the Penal Law, a misdemeanor, and an adjournment in contemplation of dismissal (hereinafter referred to as ACD) pursuant to CPL 170.55 was granted on consent of all parties. On November 14, later the same day, the Assistant District Attorney appeared in this court and made application ex parte to restore the case to the calendar and to vacate the ACD. The court granted the application to the extent of restoring the matter to the calendar for November 26, 1973, to notify all parties. On the stated date all parties appeared before the court and after hearing the Assistant District Attorney’s arguments in favor and the defendant in opposition, the court granted the People’s motion and vacated the ACD. Defendant now urges, in support of his motion to reargue, the following grounds:
(1) That there was no showing of1 good cause to grant the application;
(2) That an evidentiary hearing was required before such application could be granted; and
(3) That granting such order without a hearing was a violation of defendant’s constitutional rights.
CPL 170.55, effective ¡September 1, 1971, is as follows:
11 1. Upon or after arraignment in a local criminal court upon an information, a simplified traffic information, a prosecutor’s information or a misdemeanor complaint, and before entry of a plea of guilty thereto or commencement of a trial thereof, the court may, upon motion of the people or the defendant and with the consent of the other party, or upon the court’s own motion with the consent of both the people and the defendant, order that the action be ‘ adjourned in contemplation of dismissal,’ as prescribed in subdivision two.
“2. An adjournment in contemplation of dismissal is an adjournment of the action without date ordered with a view to ultimate dismissal of the accusatory instrument in furtherance of justice. Upon issuing such an order, the court must release the defendant on his own recognizance. Upon application of the people, made at any time not more than six months after the issuance of such order, the court must restore the case to the calendar and the action must thereupon proceed. If the case is not so restored within such six months period, the accusatory instrument is, at the expiration of such period, deemed to have been dismissed by the court in furtherance of justice.”
The question before this court is whether the term “ must ” in the statutes is to be construed as mandatory or directive. Whether, on application of the People, the court has discretion *45 to grant or deny the motion to restore the case to the calendar and to vacate the ACD.
Research has provided no cases in point. Resort, therefore, must be had to statutory construction. In the construction of a statute the basic rule of procedure and the primary consideration of the court is to ascertain and give effect to the legislative intent (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 92). Whether a given provision in a statute is mandatory or directive is to be determined primarily from the legislative intent gathered from the entire act and the surrounding circumstances, keeping in mind the public policy to be promoted and the results that would follow one or the other conclusions. (People ex rel. McEvoy v. Duffey, 104 Misc. 35; People v. Karr, 240 N. Y. 348.) The quest, therefore, is to ascertain the legislative intent.
The procedure under CPL 170.55 has no counterpart either in the former Code of Criminal Procedure or the New York City Criminal Court Act. Professor Richard G. Denzer, in his practice commentaries says, “ The enactment of this section was intended to codify the practices prevailing in the New York City Courts known as “ DOR ” or Discharge on Own Recognizance.”
What, then, is the DOR? The Assembly Judiciary Committee, found that “ The DOR is a judicially evolved mode of disposition of a case pursuant to which, on application of the defendant and with the consent of the People, á defendant is released from custody on supervision without the payment into Court of any fund or security and without any formal disposition of the complaint made against him.”
It further found that “ The remedy (the DOR) was developed, it is believed, as an equitable relief whereby a case might be disposed of to the satisfaction of the defendant, while at the same time, reserving to the People the power to reinstate the case, if needed, in instances in which middle ground was desirable.” Report of the Judiciary Committee of the Assembly No. 37, 1963.
Under the DOR, the authority for which was derived from section 669 of the Code of Criminal Procedure, a case may be continued from term to term and defendant discharged on his own undertaking to be brought to a final disposition either by the People’s motion to restore to the calendar or defendant’s motion to dismiss. “ Requiem for the DOR ”, Bronx Bar Association Advocates March 5, 1963, Judge J. Howard Rossbach.
After reviewing the history and background of the DOR, the Judiciary Committee then recommended to the Assembly an express authorization for the DOR. The Legislature, therefore, *46 had before it the history and background of the DOB together with the case law prior to enactment of its successor, the present. ACD.
In the leading case on DOR, Matter of Silver v. Gassman (12 Misc 2d 58, affd. 6 A D 2d 694), the court came to grips with a DOR problem similar to that with which we are here confronted. The Supreme 'Court, in reversing a lower court order denying an application by the People to vacate DOR, held that vacating DOR and restoring the case to the calendar was a ministerial act which must be exercised by the court on application of the People. That it was the responsibility of the People to bring the defendant to trial, and the court does not have the power to determine for the People who should be prosecuted for crimes and who should be brought to trial, citing McDonald v. Goldstein (191 Misc. 863, affd. 273 App. Div. 649). The Appellate Division affirmed.
Section 170.55 provides that the court may grant an ACD on consent of both parties and that the court, therefore, must release the defendant on his own recognizance. It then further states that the court must restore the case to the calendar at any time not more than six months after issuance of the order on motion of the People.
This court holds that the legislative intent in the usage of the word “ must ” in section 170.55 is that it is mandatory and not directive. That on application of the People, the court is required to restore the case to the calendar, such act being' a purely ministerial one. The statute must be interpreted further to mean that where the motion is made by either party to grant an ACD, the court may, in its discretion, and upon consent of the other party, grant such application. Upon granting such application, the case will then remain in a state of suspended animation, life to be restored only in the event of an application made by the People, in which event, the court is mandated to grant same. Thereafter, the case is then to proceed from the point at which the suspension had taken place by virtue of the ACD and will be reactivated only upon being restored to the court calendar.
In holding the language of the statute to be mandatory, the court finds that it is without power to hold an evidentiary hearing to determine whether there is sufficient cause to grant such application. A reading into the statute of the requirement of an evidentiary hearing, as proposed by the defendant, before the case could be restored to the calender, would serve to negate the legislative intent. Moreover, the ACD is, in effect, a reluctance on behalf of the People to prosecute the case, which con *47 fers upon the defendant no rights except that to have the case dismissed at the expiration of six months, if not restored to the calendar within that period.
Defendant argues that the grant of an ACD is analogous to probation or parole, whereby an evidentiary hearing is required before revocation of the parole or probation status can occur. The analogy does not exist. Probation or parole results after a finding of guilt and constitutes a judgment of the court on the sentencing of a defendant, the violation of which could result in further incarceration, depriving a defendant of his liberty. The ACD status is not a judgment of the court after a finding of guilt but a determination prior to consideration. There is no adjudication of any substantial rights by a determination of the court to grant or deny an ACD.
Reliance by the defendant on the case of People v. Griffith (43 A D 2d 20) is misplaced. The case involves plea bargaining and holds that by entering into an agreement with the defendant to recommend a definite sentence in return for a plea, the Assistant District Attorney could not withdraw its agreement after the plea had been accepted. In plea bargaining cases, the court reads into the negotiation a contract binding on the People. No such contract can be read into an ACD as it involves no substantial right of the defendant.
The court is referred to the case of People v. Glaubman (68 Misc 2d 698) in which the court declined to grant an ACD for a traffic infraction. The court then went on to discuss in dicta that if such ACD was granted, the District Attorney could make a motion to restore only if he had in hand information that would warrant the taking of such action, and further, that a probation department report might be required. This court declines to follow this reasoning.
In People v. Pomerantz (76 Misc 2d 766) Judge Brown, after reviewing the facts and the law, denied the application made by counsel for complainant for an order restoring the case to the calendar. This case .turns on issues different from those before this court.
In determining whether a violation of defendant’s constitutional rights exists, the question is not merely the weight of the individual’s interest, but whether the nature of the interest is one within the contemplation of the liberty or property language of the Fourteenth Amendment. (Fuentes v. Shevin, 407 U. S. 67.) Whether any procedural safeguards are due depends on the extent to which an individual would be condemned to suffer *48 grievous loss. (Joint Anti-Fascist Refugee Committee v. McGrath, 341 U. S. 123.) It does not appear that by vacating the ACD and restoring the case to the calendar, any substantial interest of the defendant is affected. Nor does it appear such action would bring about any grievous loss in violation of defendant’s Fourteenth Amendment rights.
The court, having considered the application for reargument and the briefs submitted by the respective parties, concludes that the prior decision of this court vacating the ACD and restoring the case to the calendar should stand.