OPINION OF THE COURT
Thomas Aloi, J.
Both parties request summary judgment pursuant to CPLR 3212, and defendant also moves for dismissal pursuant to CPLR 3211 (subd [a], pars 7, 3) on the grounds that the complaint fails to state a cause of action and that plaintiff lacks capacity to sue.
Plaintiff is a legal services organization which represents over 1,000 indigent criminal defendants each year in City Court, City of Syracuse. Defendant is the District Attorney of Onondaga County. By affidavit of its staff attorneys, plaintiff alleges that defendant unlawfully conditions consent to adjournments in contemplation of dismissal (hereafter ACD’s) upon the performance of uncompensated community service. Plaintiff claims that the circumstances coerce defendants’ participation in the program, which exists in violation of both State statute and Federal constitutional law. The District Attorney denies that participation is in any way coerced, and alleges that consent to an ACD is a matter exclusively within prosecutorial discretion and that in any case plaintiff lacks standing to raise the issue.
Indisputably, a pretrial diversionary program of community service is now being implemented by City Court Judges (whose affidavits are attached to defendant’s papers) with the cooperation of local volunteer agencies. Plaintiff attacks the alleged lack of authority for the program in general, and the manner of its administration in particular cases. Plaintiff’s allegations, if accepted as true for purposes of this motion, undoubtedly state a cause of action — one which raises issues of vital concern not merely to the individual criminal defendants whom plaintiff represents, but to the entire community.
Such questions as these ought not be resolved on *1048 sketchy, hastily drawn motion papers, but instead require a meticulous inquiry into the facts, and an opportunity to be heard for all segments of the community with an interest in the administration of criminal justice. Both motions for summary judgment are therefore denied.
Although, as previously noted, the court finds that plaintiff has stated a cause of action, this complaint must nonetheless be dismissed. After careful consideration of the principles involved and of the relevant case law, the court is forced to agree with the defendant: plaintiff lacks standing to sue.
In recent years both Federal and State courts have adopted more liberal interpretations of the "aggrieved person” test for standing (see Data Processing Serv. v Camp, 397 US 150; Baker v Carr, 369 US 186; Boryszewski v Brydges, 37 NY2d 361; Wein v City of New York, 36 NY2d 610; Matter of Burke v Sugarman, 35 NY2d 39; Matter of National Organization for Women v State Div. of Human Rights, 34 NY2d 416). Even while broadening the definition of standing, however, New York courts have retained the minimum - requirement that a plaintiff be "substantially affected” by the challenged governmental action (Society of Plastics Ind. v City of New York, 68 Misc 2d 366, 369), to insure "the necessary adverseness * * * and that the petitioner is not a mere intermeddler in the administrative process” (Matter of Douglaston Civic Assn. v Galvin, 36 NY2d 1, 8).
Upon careful examination of the cases, the court concludes that plaintiff fails to qualify for standing as an organizational representative of the class of persons whose rights are claimed to have been violated (Urowsky v Board of Regents of Univ. of State of N. Y., 38 NY2d 364, 369). Plaintiff is not a nationally recognized organization dedicated to lobbying against a particular kind of discrimination, as are the National Organization for Women and the National Association for the Advancement of Colored People (National Organization for Women v State Div. of Human Rights, 34 NY2d, supra, at p 419; Suffolk Housing Servs. v Town of Brookhaven, 91 Misc 2d 80, 91, mod 63 AD2d 731). Nor is plaintiff similar to a trade association whose membership "very closely corresponds to the entire class of potentially aggrieved parties” (Matter of National Elevator Ind. v State Tax Comm., 65 AD2d 304, 308). At best, plaintiff could claim to represent only one portion of the entire class of aggrieved parties.
*1049 Further, there is one respect in which plaintiff substantially differs from the organizations which have been granted standing to represent an unnamed class: neighborhood groups, trade associations, and political activist organizations are all voluntary associations' of individuals with common interests. By contrast, plaintiff is an organization created to provide legal representation to indigent persons accused of criminal acts. In a very real sense, the relationship between the plaintiff and its clients is involuntary: whether individual or organizational, pro bono counsel is assigned, not chosen. Its clients’ opinions of the diversionary program may be radically different from that of plaintiff’s legal staff, yet by bringing this action in its own name, plaintiff has offered its clients no opportunity to be heard.
Among plaintiff’s clients there may well be many whose interests would be sufficiently at stake to give them standing to challenge the diversionary program, but it is indisputable that the rights and obligations of plaintiff and its staff would remain entirely unaffected, whatever the outcome of such litigation.
In this connection, the court finds plaintiff’s reliance on canon 7 of the Code of Professional Responsibility and its ethical considerations to be misplaced. The difficulty of advising a client where the bounds of law are uncertain does not give an attorney grounds to sue on his own behalf, for a declaration of his client’s rights. Such a holding would open the courthouse door to floods of litigation by mere concerned bystanders, such as experts seeking judicial approval of their views, or Bar Association committees attempting to "legislate” through the judicial branch of government. This would be a complete reversal of the judiciary’s traditional refusal to grant advisory opinions.
Plaintiff is not left completely without access to the courts, however. Should a proper party commence a similar declaratory judgment action, the trial court would undoubtedly (and gratefully) accept an amicus brief. If plaintiff feels that defendant’s policy with respect to ACD’s, or with respect to the diversionary program, fails to satisfy the exacting standards for prosecutorial conduct prescribed by the Code of Professional Responsibility, then plaintiff should consider filing a complaint with the appropriate Bar Association committee, whose decision could, if necessary, be reviewed by the Appellate Division.
*1050 In accordance with all of the foregoing, defendant’s motion to dismiss on the ground of plaintiffs lack of capacity to sue is granted.