OPINION OF THE COURT

Per Curiam.

This decision pertains to motions by four individual defendants charged with violation of section 260.05 of the Penal Law, criminal nonsupport of a child. Each prosecution is currently pending in the Syracuse City Court. Although these motions were made separately, based on facts particular to each case, and addressed to a particular Judge, we find the issues raised to be so similar that they are most appropriately addressed in one comprehensive discussion. A need for uniformity and guidelines in effectively dealing with the numerous prosecutions for nonsupport that have occurred in recent months has further prompted this court to join together in its findings.
Richard A. Boyer was arraigned on November 2, 1979, and charged with this class A misdemeanor. The matter was pretried extensively and then placed on the Trial Calendar. At the time of trial, prior to the selection of the jury, the defendant raised certain jurisdictional questions. Sub *881 sequently, the defendant made written motions addressed to Judge Joseph F. Falco to dismiss. The contentions advanced by the defendant involve nonwaivable defects and are therefore properly before the court at this time. (People v Weinberg, 34 NY2d 429; People v Minuto, 71 Misc 2d 800; People v Conoscenti, 83 Misc 2d 842; People v Poll, 94 Misc 2d 905.)
Eugene W. Black was arraigned on October 16, 1978. Defendant’s omnibus motion contains requests for both dismissal and discovery and is before Judge James J. Fahey.
Fred O. T. Agyeman was arraigned on September 19, 1979, and an omnibus motion was subsequently presented to Judge Mathilde C. Bersani. At that time, discovery of various material was granted and defendant’s requests for dismissal were denied, based solely on the original motion papers. Defendant’s motion for a dismissal in the interests of justice was also denied. All motions to dismiss are now renewed, based upon newly discovered information and due to the court’s desire to maintain uniformity among its decisions.
Robert L. Brown was arraigned on November 2, 1979, and has also made similar motions addressed to Judge Bersani.
I. SUFFICIENCY OF THE ACCUSATORY INSTRUMENT.
Each defendant moves to dismiss the accusatory instrument for the reasons that it is insufficient, conclusory and does not comply with CPL 100.40 (subd 1):
“An information, or a count thereof, is sufficient on its face when:
“(a) It substantially conforms to the requirements prescribed in section 100.15; and
“(b) The allegations of the factual part of the information, together with those of any supporting depositions which may accompany it, provide reasonable cause to believe that the defendant committed the offense charged in the accusatory part of the information; and,
“(c) Non-hearsay allegations of the factual part of the information and/or of any supporting depositions establish, *882 if true, every element of the offense charged and the defendant’s commission thereof.”
The pertinent part of CPL 100.15 referred to above provides: “3. The factual part of such instrument must contain a statement of the complainant alleging facts of an evidentiary character supporting or tending to support the charges * * * in order for an information or a count thereof to be sufficient on its face, every element of the offense charged and the defendant’s commission thereof must be supported by non-hearsay allegations of such information and/or any supporting depositions.” (Emphasis added.)
A form instrument was utilized in the prosecution of all defendants charged with criminal nonsupport. The text of the information utilized regarding Richard A. Boyer is as follows:
“I, Joseph A. Lupia, the complainant herein, of the office of the District Attorney of Onondaga County, at Syracuse, New York, hereby ACCUSE Richard A. Boyer, the DEFENDANT in this action and charge that from on or about the 1st day of December, 1978, to the 31st day of August, 1979, at the CITY of SYRACUSE, COUNTY OF ONONDAGA, State of New York, said Defendant did unlawfully commit the Misdemeanor of NON-SUPPORT OF A CHILD, contrary to the provisions of Section 260.05 of the Penal Law of the State of New York, to wit:
“1. The Defendant is the parent, legally charged with the care of the following (child) under the age of sixteen (16) years, to wit:
NAME
“Richard A. Boyer, Jr.
DATE OF BIRTH 9-19-68
“2. Although able to do so, the defendant has failed or refused, without lawful excuse, to provide support for the aforementioned (child).
“3. On or about the 1st day of September, 1977, the defendant was ordered by the Family Court of the State of New York in and for the County of Onondaga to pay support as follows: Respondent to pay $20.00 a week.
“On or about the 8th day of December, 1978, the defen *883 dont was ordered by Family Court of the State of New York, in and for the County of Onondaga to pay support as follows: Respondent to pay $25.00 per week.
“The above crime constitutes a continuing course of conduct.”
“That the source of deponent’s information and belief are based upon and derived from the annexed affidavit of Sally Boyer, sworn to on the 19th day of July, 1979, and your deponent’s review of the records and documents of the Family Court of Onondaga County and the. Department of Social Services for Onondaga County, said records indicating the Defendant has failed to provide support as mandated.”
Affixed to the instrument is the affidavit of Sally Boyer, which states, inter alia: “that Richard A. Boyer has not provided me with any support * * * since 1976, except a used bicycle.”[1]
It is clear that the texts of the instruments do not satisfy the above-quoted provisions of the CPL. There are no specific facts constituting the crimes alleged. The words contained in allegation number “2” are totally conclusory. This allegation merely represents a repetition of section 260.05 of the Penal Law[2] and properly belongs in the accusatory part of the instruments. (People v Penn Cent. Transp. Co., 95 Misc 2d 748.)
Each and every element of the offense charged must be supported. Such factual basis for the elements of ability to pay and willful failure to pay, must take the form of sepa *884 rate factual allegations. (People v McGuire, 5 NY2d 523; People v Case, 42 NY2d 98.) The People must allege facts of an evidentiary nature to support the conclusory allegation that defendant willfully failed to provide support for his child, although he was able to do so.
Neither the attached affidavit of the mothers involved nor the reference to the Department of Social Services and/ or Family Court records can cure the deficiency in the accusatory instruments. They serve merely to provide a basis for the lack of receipt of support payments. A statement of nonpayment is not sufficient alone to permit presumption that such failure to support was willful. (Matter of Tucker v Tucker, 41 AD2d 995.)
The use of allegation “3” infers that failure to comply with a Family Court order is an element of the offense charged. If this were indeed true, the criminal process would be utilized as a collection arm of Family Court, a blatantly impermissible use.
The People contend that the order of Family Court is included simply to represent an indicia of the amount of support the defendant was capable of paying.
An order of Family Court regarding support, unless accumulated arrears are reduced to judgment, is a nonfinal determination. Such an . order is, at any time, subject to modification, cancellation, or deferment. (Family Ct Act, § 451 ;[3] Matter of Reynolds v Reynolds, 50 AD2d 993.)
In reality, a Family Court order of support is an indicia of the defendant’s ability to pay a certain amount only as of the day the order is entered. The fact that Family Court made an order on a certain day, setting an amount of support, may not be a controlling factor in this court’s review. It is entirely feasible that immediately following the entry of that order of support, the circumstances upon which it is based could change. This change would result in a new support hearing as to circumstances; in any event, the arrears *885 accumulated could most probably be modified or totally vacated.
Proof of a civil determination may indeed be admissible in a criminal trial. However, this court feels the nonfinal nature of the Family Court order would be a most difficult concept for a jury to grasp, requiring limiting instructions before this information were submitted. A balancing of all factors indicates the potential prejudice to the defendants is far weightier than the legal relevancy and probative value of the support orders. (See Richardson, Evidence [10th ed], ch 7.)
A careful review of the Family Court Act and section 49-b of the Personal Property Law confirms this court’s belief that, in the majority of cases, the criminal justice system is an unnecessary tool for collection of support. In fact, if enforcement of the support order were all these prosecutions sought to accomplish, we would be totally lacking in jurisdiction. Family Court is granted exclusive jurisdiction to compel compliance with its own orders and is equipped with ample procedures to do so. (See §§ II, III, infra.)
The court finds that allegation numbered “3” does not serve to enhance the viability of the instruments and should not be included therein. Any statement by the People that the defendants have failed to obey an order of Family Court is extraneous and immaterial to a determination in criminal proceedings.
The court notes that the accusatory instruments are labeled “COMPLAINT/INFORMATION.” Such un ambiguous reference by the People is not dispositive of the appropriate standard to be employed in establishing the sufficiency of the instruments. (People v Penn Cent. Transp. Co., 95 Misc 2d 748, 754, supra.)
We have determined that, pursuant to CPL 100.15 and 100.40, the instruments are insufficient informations. However, for dismissal purposes, we must still determine whether we have valid misdemeanor complaints before us.
A misdemeanor complaint does not require every element of the offense to be actually set forth. (People v Minuto, *886 71 Misc 2d 800, supra; CPL 100.15, 100.40.) The standards for sufficiency stated in the CPL have been met as, upon a reading of the evidentiary facts alleged, there is reasonable cause to believe the defendant committed the offense charged. (People v Conocenti, 83 Misc 2d 842, supra.)
The court sustains the instruments in question as valid misdemeanor complaints. Rather than ordering their dismissal as insufficient informations, the court directs their immediate amendment to satisfy the CPL information requirements (CPL 170.65; People v Weinberg, 34 NY2d 429, supra; People v Minuto, supra).
II. CONSTITUTIONAL ISSUES; APPROPRIATENESS OF THE CRIMINAL COURT FORM.
Each defendant has urged the courts to adopt the theory that the criminal process is being improperly used to ensure the fulfillment of support obligations incurred in Family Court. Incorporated in this theory is the concept that all proceedings regarding payment of support are exclusively within the continuing jurisdiction of Family Court, thereby negating all criminal jurisdiction. Defendants Boyer, Black and Agyeman have further argued that the actions in this court and those being maintained in Family Court are so similar as to substance and facts that these criminal prosecutions are barred by double jeopardy. No proceeding to compel support has ever been maintained against defendant Brown, and he makes no claim of double jeopardy.
In response to each motion, the People maintain that City Court has criminal jurisdiction over wow-support, and remains unaffected by the constitutional[4] and legislative[5] grant of “exclusive” jurisdiction to Family Court over sup *887 port matters. The civil-criminal distinction between the two forums is repeatedly emphasized by the District Attorney.. Family Court’s jurisdiction is specifically limited by statute; and, the People indicate this precludes Family Court from conducting nonsupport prosecutions and restricts that court to matters solely civil.
We do not interpret defendants’ argument as being a statement that Family Court is the proper forum in'which to seek a conviction for criminal nonsupport. If the purpose of a proceeding is to enforce a penal statute, Criminal Court is the proper forum. Defendant is advocating that, for the reasons stated above, a criminal prosecution is neither appropriate nor permissible and all problems of support should be treated in Family Court. We note that defendant’s position is not that unusual. The Uniform Civil Liability For Support Act (9 Uniform .Laws Ann., p 173 [1979 ed] has already been adopted in four States and has, in essence, decriminalized issues of nonsupport.[6] We do not comment here on the issue of decriminalization. Rather, we confine ourselves to the legal issues presented by the moving papers before us.
Historically, the dual availability of civil and criminal forums will not make the initial choice of one a final election of remedies, barring access to the other. (People v Goldstein, 79 Misc 2d 996; People v Topping Bros., 79 Misc 2d 260; City of Buffalo v Till, 192 App Div 99; People v Haberstrumpf, 93 Misc 2d 963; Incorporated Vil. of Westbury v Samuels, 46 Misc 2d 633.) Recent case development, however, indicates that the “civil” or “criminal” label does not, in and of itself, create an absolute dichotomy between applicable doctrines. The Court of Appeals in People ex rel. Dowdy v Smith (48 NY2d 477, 482) found the criminal-civil distinction “irrelevant for the purpose of application of *888 the doctrine of collateral estoppel”. The court there permitted a determination of the administrative Parole Board to control in a later prosecution of the same criminal defendant. Similarly, double jeopardy was recently held to act as a bar to a criminal prosecution when the purpose of a prior “civil” administrative proceeding was deemed essentially punitive, thereby placing the defendant in potential jeopardy. (People v Dairylea Co-op., Supreme Ct, Special Term, Albany County, 1978, Harvey, J.) Because of this trend in New York law, the People’s assertion that the civil-criminal distinction is dispositive of the issues before us cannot be permitted to control.
In order to resolve the issue of double jeopardy in a criminal nonsupport prosecution, we would suggest three areas be examined: (1) do the charges in both cases arise out of identical transactions, (2) was the defendant “in jeopardy” in the first proceeding, and (3) was the purpose of the first proceeding punitive ? (People v Dairylea Co-op., supra, pp 20-22.)
A reading of the accusatory instruments charging defendants Boyer, Black and Agyeman, together with the respective Family Court records, indicates that identical transactions were not involved in the two proceedings. Even defendant Black, who was incarcerated for a period of 30 days for contempt of a Family Court order, may not prevail in this claim. He was held in contempt on April 2, 1975, for prior nonpayments and is here charged with nonsupport for the period between September 12, 1976, and April 30, 1978.
It is solely for the lack of “identical transactions” in these prosecutions that we must deny all defendants’ claims of double jeopardy. The court is not convinced that the “civil” label is appropriate when referring to Family Court’s wide realm of jurisdiction. A support-related action in which a person (1) is entitled to assigned counsel to preserve his rights and (2) is placed in potential jeopardy of a deprivation of his liberty through a contempt hearing, is not a proceeding that may automatically be regarded as civil. Nor may the fact that the proceeding is in Family Court automatically exclude the viability of the double jeopardy *889 claim. (People v Dairylea Co-op., supra, pp 21-24.)[7] These proceedings must be considered on the basis of a full investigation into their true purposes.
Most probably due to the relative disuse section 260.05 of the Penal Law has fallen into, there is a paucity of case law dealing directly with that statute. The most applicable cases were decided prior to the enactment of both the current penal statute and the existing Family Court system. Therefore, a historical review of the offense of criminal nonsupport becomes relevant at this juncture.
Support-related legislation was previously diffused into three separate bodies of law: the Code of Criminal Procedure, the Penal Law, and the Children’s Court Act.
Section 899 of the Code of Criminal Procedure provided a proceeding in which a person was adjudicated “disorderly” if found to have abandoned his/her children without providing adequate support.[8] Such a determination attached a stigma of criminality; however, the offender was not classified as a misdemeanant or felon. The prosecution took on a hybrid character in that first an essentially remedial proceeding was held. At this time, the Criminal Court investigated the nonsupport allegations and set an amount of support to be paid, based upon a review of relevant facts and circumstances. The court also required a bond to be posted ensuring the fixed support payments. It was only upon the failure to post the bond or make the designated payments that the second step of imprisonment was utilized, representing the punitive criminal sanction.
Jurisdiction over misdemeanor and/or felony criminal proceedings coexisted with section 899 of the Code of Criminal Procedure pursuant to the Penal Law. Section 482 of the old Penal Law differed from the current statute (§ 260.05) in that it specifically made it a crime to fail to obey a lawful *890 order of support entered Jby another court.[9] Maintenance of prosecution under one body of legislation did not preclude prosecution pursuant to the other.
The Children’s Court Act (predecessor in part to the present Family Court Act) was enacted in 1922, as the third body of law dealing with support-related matters. Its grant of jurisdiction to Children’s Court over all proceedings to compel support (emphasis supplied; see Children’s Ct Act, § 30) raised serious questions as to the appropriateness of the criminal forum to deal with these matters.
As a result of the expanded powers of a court, whose proceedings were supposedly “civil” in nature, and the judicial interpretation thereof in People v Kenneweg (28 Misc 2d 999), Children’s Court became recognized as the only true forum where an amount of support could be established. The Kenneweg court explicitly placed a limitation on the criminal courts’ control over support matters, by excluding all issues related to amount determination. The first prong of section 899 of the Code of Criminal Procedure was held to be in direct contravention of the exclusive award of jurisdiction to Children’s Court, and therefore unconstitutional.
It is clear that Criminal Court was not intended to exercise jurisdiction over any proceeding actually awarding support or enforcing payments thereof. Furthermore, the second prong of section 899 of the Code of Criminal Procedure, although not being found unconstitutional per se, was found to be “an obsolete appendage replaced by the broad enforcement powers conferred on the Children’s Court”. (People v Kenneweg, supra, at p 1001.) Finding it improvident to seek to punish the accused criminally through section 899 of the Code of Criminal Procedure, the Kenneweg court dismissed the information in question there.
Criminal prosecution under the Penal Law was not directly questioned in People v Kenneweg (supra, at p 1002). *891 However, this court feels justified in analogizing the rationale employed therein regarding the appropriateness of criminal sanctions.
As stated above, as recently as 1960, Children’s Court was deemed capable of enforcing its own support orders. Seven years after the critical Kenneweg decision, the Penal Law was revised, with the new criminal nonsupport statute specifically deleting the clause that made it a crime to violate an order of support entered in another court. Additionally, the Children’s Court Act has since been repealed and replaced with the Family Court Act.
The new Family Court Act has greatly expanded the jurisdiction and resources available to that court, as compared with those remedies Children’s Court had at its disposal. Just with regard to article 4 of the Family Court Act, that portion regulating support, Family Court now has the ability to demand financial affidavits (Family Ct Act, § 424-a), conduct extensive fact-finding hearings (Family Ct Act, § 433), issue warrants (Family Ct Act, §§428, 453), award support (Family Ct Act, § 440), and enforce its own orders. Enforcement of support orders can now take many different routes, depending on the appropriateness of a particular method for each case. Of all those available, wage orders (Family Ct Act, § 448; Personal Property Law, § 49-b) and sequestration of property (Family Ct Act, § 457) are the most suitable, if one recognizes the remedial purpose behind enforcing support. Contempt sanctions (Family Ct Act, § 454), with imprisonment of renewable periods are also available and usually are employed as a last resort when it is found that an individual is willfully in violation of the support order.[10]
A reading of sections 411 and 451 of the Family Court Act, in conjunction with section 13 of article VI of the New York Constitution[11] has led us to the conclusion that Family Court has exclusive jurisdiction over all support fixing and enforcement proceedings. The Kenneweg court *892 prohibited criminal court to infringe on matters relegated to Children’s Court. Similarly, this court recognizes its lack of jurisdiction to delve into matters determinative of needs of children, means and ability of parents to pay support and the adequacy of payments. These matters may only be investigated by Family Court.
The court does not find this existence of Family Court’s exclusive jurisdiction to constitutionally preclude the legislative grant of criminal misdemeanor jurisdiction. (People v Rogers, 248 App Div 141; Lyons v Municipal Ct, 75 Cal App 3d 829.) However, due to the restrictions on inquiry regarding the critical factors of support referred to above, this court cannot adequately investigate allegations of nonsupport. In addition, based upon the extensive remedies now available in Family Court, criminal sanctions for nonsupport become more blatantly an “obsolete appendage” to the Family Court system. Extreme caution should be observed before resort is made to the criminal justice system; to do otherwise would be an improvident exercise of jurisdiction. “Criminal prosecution should not be used where there is an adequate civil remedy to force a parent to support his children.” (Byrne v State, 365 So 2d 812, 813 [Fla].)
III. DISMISSAL IN THE FURTHERANCE OF JUSTICE
The court now addresses the issue of a dismissal in the furtherance of justice. As regarding defendants Boyer and Black, this motion is raised by the court and is based on extensive argument by both parties. Defendant Agyeman’s original motion on these grounds was dismissed, but is renewed here due to the presentation of additional factors that the court finds compelling. Both defendant Brown and the People presented this issue when the defendant’s motion was first argued before the court.
DISCUSSION
A dismissal in the furtherance of justice “is required as a matter of judicial discretion by the existence of some compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution of the defendant *893 upon such accusatory instrument or count would constitute or result in injustice.” (CPL 170.40, subd 1.)
The court agrees with the District Attorney that judicial discretion in this matter is not absolute and should be utilized “as sparingly as garlic.” (People v Wingard, 33 NY2d 192; People v Clayton, 41 AD2d 204; People v Stern, 83 Misc 2d 935, 940; People v James, 98 Misc 2d 755.) Coincidentally, a reading of the 1967 Practice Commentary indicates that the Legislature intended criminal sanctions for nonsupport be enforced just as sparingly. “Ideally, the problems of * * * non-support of children should not be in a penal code at all. The primary objective of legislation in this area should be to compel recalcitrant parents and guardians to recognize and fulfill their legal and moral obligations of care and support. Since this is difficult to achieve by imprisoning offenders, the optimum solution is a judicial and administrative framework such as is found in the Family Court Act. However, practical experience has shown that penal sanctions serve a necessary function in this area as a deterent and, occasionally, are the only effective means of dealing with the situation.” (Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 260.05, p 404; emphasis added.)
The 1972 commentary further reflects the belief that section 260.05 is an undesirable means of compelling support. “[T]he inherent weakness of this section is again highlighted, namely, that the criminal law is an inappropriate — if not useless — vehicle for the enforcement of intrafamilial responsibilities.” (Id., p 405.)
In making a determination regarding dismissals in the furtherance of justice, it is critical that the court reach a balance between safeguarding the interests of the public and those of each defendant.[12] In all four prosecutions now before the court, the primary interest of the public is to see *894 to it that a “recalcitrant parent” provide monetary support for his child. In each case, the People have contended that the State’s interest additionally mandates a criminal conviction become a part of the defendant’s record. The court finds numerous issues and facts suggesting that to grant these motions would in no way subvert legitimate public concerns regarding the support of dependent children.
Defendant Boyer was 1 of 20 individuals arrested in the early morning hours of September 12, 1979. Defendant Agyeman was arrested under similar circumstances on September 19, 1979.[13] All these arrests were made pursuant to valid arrest warrants. However, these two defendants had no criminal record, a factor they shared with the vast majority of defendants arrested during the same time period for the same charge. Defendant Boyer is additionally a resident of the City of Syracuse, and there is nothing in any court record indicating either Mr. Boyer or Mr. Agyeman would have refused to have answered a summons, had one been utilized to obtain jurisdiction over their persons. This court recognizes there is no statutory requirement that a summons be employed in place of a warrant. (New York Criminal Practice under the CPL, Pitler, 1979 Cumulative Supplement, § 2.1; see, also, CPL 120.20; People v McNeil, 90 Misc 2d 180.) However, a careful reading of People v McNeil (supra, p 182), and the Practice Commentary by Denzer (McKinney’s Cons Laws of NY, Book 11 A) regarding CPL 120.20 (subd 3) illustrates that a balance should be sought between minimizing “the intrusion upon the freedom of a citizen * * * wherever practicable” and the discretionary use of an arrest warrant. We fail to see any legal goal served by the prosecutorial agencies simultaneously arresting and arraigning some 30 individuals for criminal nonsupport.
As was discussed in section II (supra), Family Court is equipped with a wide range of remedial resources and punitive sanctions. Regarding the Boyer case, a wage order was issued after this prosecution was commenced. The records *895 indicate that this step proved effective in collecting support while Mr. Boyer was employed. Family Court has made similar reviews of Mr. Black’s financial status. As a result of these investigations, that court deemed it appropriate to totally vacate any financial obligation Mr. Black currently owes his child.
Regarding both Mr. Brown and Mr. Agyeman, the Family Court, which established the support orders, together with the Department of Social Services, which was responsible for their enforcement, did not see fit to issue wage orders. Neither did the Family Court nor the Department of Social Services see fit to institute either violation hearings or contempt proceedings under the Family Court Act.
It was only regarding Mr. Black that any contempt proceeding, which would result in imprisonment if a finding of willful nonpayment were made, was ever utilized. Any imprisonment or contempt citation pursuant to the Family Court Act would appear on the defendant’s record.
Thus we see that the State’s interest in receiving support payments from those able to pay can be adequately safeguarded through the use of the Family Court system. In fact, it is quite likely that the Family Court could have achieved full payment of support from Mr. Brown, without burdening the already overcrowded criminal justice system. In light of the financial status of the other defendants, it seems unlikely that these proceedings could compel payment from individuals with little or no resources.
The children of these defendants are not the true “victims” of this alleged conduct. Were “restitution” to be received, it would in actuality be used to reimburse the public purse. The court is not convinced that this is a valid purpose of the Penal Law. The Social Services Law provides for the maintenance of civil proceedings pursuant to title 6 of article 3, whose specific function is to enforce orders providing for the support of recipients of public assistance.[14]
*896 Definite problems regarding proof of the guilt of these defendants are apparent to the court. While three of the defendants contend payments were made to the mothers of the children there are sworn affidavits from these women that virtually no moneys have been received. The court recognizes the difficulties that recipients of public assistance encounter in attempting to meet their financial obligations. We also recognize that the receipt of occasional moneys can help relieve day-to-day pressures, but can also serve to decrease any assistance allotments. Any and all money received must be reported to the Department of Social Services or the recipient may be subjected to a welfare fraud prosecution. Although we do not necessarily impute any questionable conduct here, issues that reflect on the guilt of the defendants are certainly raised.[15]
Any interest of the defendants in avoiding a criminal record is certainly not a trivial one. A criminal conviction on a previously unblemished record can accomplish little more than impede any potential increases in earning capacity. Additionally, this criminal stigma can foreseeably be counterproductive to an ability to meet future support obligations. Imposition of a criminal record in these cases would represent a society vindictively seeking to punish the defendants, a utilization of sanctions this court finds inappropriate.
“Although the Court cannot condone any illegal conduct, criminal or otherwise, it is charged with the responsibility to do what it can to insure justice in individual cases.” (People v Dairylea Co-op., supra, at p 26.) The specific facts of these cases, combined with the inappropriateness of the criminal forum at this time, serve as the bases for the court granting these motions to dismiss. In no way is justice, to either the defendants or society as a whole, served by the maintenance of these prosecutions.
Society suffers in that a more costly and less efficient process has been utilized, in two instances without resort ever having been made to the comprehensive Family Court *897 system. In the other two cases, Family Court has taken action that renders criminal prosecution meaningless. Additionally, a severe overcrowding of the criminal calendar becomes a real possibility, should this practice continue.[16],[17] Even more importantly, the individuals would suffer injustice were these motions not granted. This court does not possess the expertise, nor the jurisdiction, to adequately investigate all the necessary ingredients of support. Nor does this court have the power to enforce the orders of support established in Family Court.
In effect, to continue these prosecutions would be to deprive both the defendants and their “victims” of a more meaningful resolution of the nonsupport dilemma.
Judges Falco, Fahey and Bersani concur.

. The accusatory instruments and supporting affidavits utilized regarding Eugene W. Black, Fred O. T. Agyeman and Robert L. Brown are virtually identical in substance. The only appreciable differences are in the dates each defendant is alleged to have failed to support his child, the name and birth date of each child and his/her mother, the dates and amounts of support pertaining to Family Court orders and what, if anything, was alleged by the mother to have been provided by the defendant to his child that was not ordered by Family Court.

. “§ 260.05 Non-support of a child
“A person is guilty of non-support of a child when, being a parent, guardian or other person legally charged with the care or custody of a child less than sixteen years old, he fails or refuses without lawful excuse to provide support for such child when he is able to do so, or becomes unable to do so, when, though employable, he voluntarily terminates his employment, voluntarily reduces his earning capacity or fails to diligently seek employment.”

. Family Ct Act, §451: “Continuing jurisdiction
“The court has continuing jurisdiction over any support proceeding brought under this article until its judgment is completely satisfied and may modify, set aside or vacate any order issued in the course of the proceeding.”

. NY Const, art VI, § 13: “[Family Court established; composition; election and appointment of judges; jurisdiction]
“b. The family court shall have jurisdiction over the following classes of actions and proceedings which shall be originated in such family court in the manner provided by law: * * * (4) the support of dependents except for support incidental to actions and proceedings in this state for marital separation, divorce, annulment of marriage or dissolution of marriage”.

. Family Ct Act, § 411: “Jurisdiction
“The family court has exclusive original jurisdiction over support proceed *887 ings under this article and in proceedings under article three-a of the domestic relations law * * * On its own motion, the court may at any time in the proceedings also direct the filing of a neglect petition in accord with article three of this act.”

. Ryan, Decriminalization of Non-Support in Maryland — A Re-Examinatian of a Uniform Act Whose Time has Arrived, 7 Univ Baltimore L Rev, pp 97-106.

. See Matter of Kane v Need (269 NY 13) and People ex rel. Foley v Dros (24 Misc 2d 44).

. Code Grim Pro, § 899: “Who are disorderly persons.
“The following are disorderly persons:
“1. Persons who actually abandon their wives or children, without adequate support, or leave them in danger of becoming a burden upon the public, or who neglect to provide for them according to their means.”

. Penal Law, § 482: “Unlawfully omitting to provide for a child 1. A person who willfully omits, when able to do so, or without lawful excuse, to perform a duty by law imposed upon him or to furnish food, clothing, shelter or medical or surgical attendance to a minor * * * as may have been required by the order of a court or magistrate is guilty of a misdemeanor.”

. As was discussed in part I (supra), Family Court also has the option of modifying and/or canceling all arrears, if it makes a later finding of inability to pay.

. See ns 3, 4, 5 (supra) for text.

. In People v Clayton (supra) seven criteria were enumerated by the court. At the time this motion was argued, these criteria provided an excellent “basis on which to rest judicial discretion.” (People v James, supra, p 760.) Since that date CPL 170.40 (subd 1) was amended, establishing 10 criteria for the court to “examine and consider, individually and collectively”. All represent various factors that go to either the interests of the State or those of the individual defendants.

. Syracuse City Court records reflect 30 arraignments for criminal nonsupport between September 10 and 19, 1979.

. The court finds it interesting to reflect upon the fact that the taxpayers are supporting the defendants’ children through public assistance, a point repeatedly emphasized by the District Attorney. Now, as a result of these prosecutions, the taxpayers are bearing the additional costs of representing at least three defendants and extensively utilizing the court process.

. See GPL 170.40 and People v Clayton (41 AD2d 204, supra) regarding proof of guilt of defendant to be considered in granting dismissal pursuant to this section.

. Ryan, “Decriminalization of Non-Support in Maryland — A Re-Examination of a Uniform Act Whose Time has Arrived”, 7 Univ Baltimore L Rev, pp 97-106.

. The court notes with disapproval that these cases represent but three of numerous nonsupport prosecutions in which the District Attorney vetoed all potential dispositions pursuant to GPL 170.55. That office’s blanket policy of insisting on full payment of Family Court arrears, in addition to a plea of guilty to the charge, fails to recognize that every case must be dealt with on an individual basis. We stress that “the classic argument usually advanced in opposition to applications for dismissal in the interests of justice in which real or purported prosecutorial intransigence is at stake is that this remedy cannot properly be invoked to overrule a prosecutor’s discretion in refusing consent to an adjournment in contemplation of dismissal. The adjudication herein is based upon the particular facts before us and not as a response to purported intransigence. Nevertheless, were the reverse true, we are not convinced of the validity of this argument in the face of Judge Sobel’s erudite opinion, cited with approval by Clayton itself, which traces the roots of GPL 170.40 and its predecessor statutes back to the power of nolle prosequi. This power was traditionally reserved exclusively to the prosecutor, and forms at least part of the foundation of the present day discretion in consenting to adjournments in contemplation of dismissal. It cannot be disputed that the court’s power to dismiss in the interests of justice is directly rooted in a legislative intent dating from the 1849 report to transfer this power to the court to act where the District Attorney does not.” (People v James, 98 Misc 2d 755, 759, n 1, supra.)