OPINION OF THE COURT
Herbert Kramer, J.
The question before the court is whether the renewal of criminal prosecution by the restoration of an adjournment in contemplation of dismissal (ACD) because of the failure of restitution due to indigency in the six-month period between disposition and final dismissal is permissible. We hold that it is not, and this matter is dismissed in the interest of justice.*
*327 Undoubtedly, the ACD is a beneficial expedient to the criminal justice system. However, it is inherently subject to misapplication when it is made conditional upon a promise improperly extracted from the defendant, or one which, upon restoration, has become improper. The court must examine the ACD arrangement on a case-by-case basis to insure that the defendant has not unwittingly entered into an unconstitutional agreement. (Matter of City of Cohoes v Spizowski, 72 AD2d 847.) Similarly, the court must safeguard the defendant’s rights when the restoration mechanism is utilized.
In each of the three cases at bar, an ACD was granted upon defendant’s promise, either on the record or off the record without the court’s knowledge or consent, to make restitution. Upon failure of restitution, the District Attorney had the matters restored, as the statute patently allows.
Thereafter, at a hearing held before me, defendants Cunningham and Garcia stated that their dereliction and present indigency were occasioned by the loss of their jobs subsequent to the restitution agreement. The third defendant, Nancy Bradford, asked for an extension of time to pay until she secured employment. Defendant’s mother sent a letter to the court stating that her public assistance had been reduced upon her daughter’s majority. She begged the court’s indulgence in granting an extension of time to pay.
The court questions the propriety of restoration on the facts of these cases. This is not to say that restitution has no place in criminal court. It is a viable remedy where the defendant is able to pay. Restitution becomes inappropriate when the defendant’s financial condition is such that a civil judgment against him would be incapable of satisfaction *328 by virtue of indigency. It is worthy of mention that all three defendants have been represented by the Legal Aid Society, which only services the indigent.
Moreover, one of the defendants is dependent upon public assistance which has its own strong public policy against use of funds for other than stated purposes. To mandate restoration of these cases is to create a class of status offenders, i.e., the impoverished.
The decision to offer an ACD need not be justified or explained by the District Attorney (see People v Siragusa, 81 Misc 2d 368, 370), but this court will not be a party, albeit ministerially, to an ACD restoration if it has an unconstitutional effect. Indigency has been held to preclude revocation of probation for inability to pay a -fine (Tate v Short, 401 US 395; State v Gerard, 57 Wis 2d 611, 621-622 [citing Matter of Antazo, 3 Cal 3d 100]; People v Collins, 47 Misc 2d 210); similarly, it precludes incarceration for inability to pay court costs. (Wright v Matthews, 209 Va 246; see 31 ALR3d 926; cf. CPL 420.10, subd 4.) There is no distinction between the deprivation worked upon a defendant when inability to make restitution payments triggers renewed prosecution.
Though prosecutors are afforded great latitude in deciding what charges to prosecute, once they have determined that a matter merits dismissal, the defendant’s inability, due to indigency, to complete restitution payments is an illegitimate basis for reversing that decision. (Cf. People v Wilmot, 104 Misc 2d 412.) Equal protection guarantees forbid discrimination based on poverty. (State v Gerard, supra; Matter of Antazo, supra; People v Collins, supra.) The ACD statute, though now mandatory on its face, takes a back seat to the United States Constitution (cf. Hiscock Legal Aid Soc. v Hennessy, 101 Misc 2d 1046).
The court finds that the interest of justice is served, notwithstanding the attitude of the victim, for the reasons set forth in detail above.
Motion to dismiss is granted.

 The ACD statute currently in effect reads, in pertinent part: “Upon application of the people, made at any time not more than six months after the issuance of such order, the court must restore the case to the calendar and the action must thereupon proceed.” (GPL 170.55, subd 2; emphasis added.)
The Legislature has recognized the inherent difficulty of mandatory restoration in the face of matters such as this and has amended the ACD statute, effective September 1, 1980, removing the mandatory language and providing *327 as follows: “the court may restore the case to the calendar upon a determination that dismissal of the accusatory instrument would not be in furtherance of justice” (L 1980, ch 24; emphasis added). In the interregnum, and consistent with the practice favoring the determination of constitutional issues in appellate courts (see People v Mason, 99 Misc 2d 583, 587) this court shall base its decision upon GPL 170.40. Essentially, the Legislature has engrafted to GPL 170.55 the “interest of justice” standards of GPL 170.40,'thus bridging the gap which necessitated restoration, pursuant to GPL 170.55, followed by dismissal, pursuant to GPL 170.40, such as effected by Judge Milonas in People v Dibono (82 Misc 2d 177).