OPINION OF THE COURT
Stanley Gartenstein, J.
We hold herein that there exists no statutory or constitutional right to a hearing in favor of the recipient of an adjournment in contemplation of dismissal. (ACD) prior to vacatur thereof and restoration of the underlying cause for trial or disposition.
the facts:
After the respondent herein was found to have committed an act which if committed by an adult would constitute a crime under section 165.25 of the Penal Law (jostling) the matter was adjourned in contemplation of dismissal on consent for a six-month period to expire on July 7, 1982. During the statutory six-month interval between disposition and formal dismissal, respondent was again arrested *315 and charged with attempted burglary, criminal mischief and other charges. Those charges are as yet unadjudicated. On the basis of this new arrest, the Department of Probation which monitors the interim six-month statutory period prior to formal dismissal (Uniform Family Ct Rules, 22 NYCRR 2507.9 [b]) filed a petition praying for vacatur of the ACD and restoration to the calendar for dispositional hearing. Respondent, demanding a hearing on the issue of vacatur, claims that prior to an adjudication of guilt on the new charge, the conditions of the prior ACD cannot be deemed violated. Hence, he claims, restoration would be improper. We disagree. The application to restore this cause is disposed of on an ex parte basis without hearing, and is granted.
ADJOURNMENT IN CONTEMPLATION OF DISMISSAL:
The procedural device now referred to as an adjournment in contemplation of dismissal (ACD) is historically rooted in adult criminal justice and existed in that system long before its current incarnation. Its recent transplant into the juvenile courts dates back less than a decade (L 1973, ch 806). In order to comprehend the juvenile court version, it is necessary to understand the history and surrounding procedure of the original application. The fundamental insight too often obscured by the minutiae of a daily grind in processing of 650 arrests within the City of New York alone (Special Committee on Criminal Justice — Assn, of Bar of City of NY, Discussion Paper No. 4, Dec., 1978) is that the criminal justice system itself represents an ad hoc compromise between prerogatives of the prosecutor and those of the court itself. As a public officer charged with his own constitutional and statutory responsibilities, the prosecutor is possessed of certain prerogatives which might, under other circumstances, ordinarily belong to the court. Among these are the right to make the nonreviewable determination concerning whether or not any act alleged to be a crime will be prosecuted (People v Elfe, 34 Misc 2d 206; People v Jones, 32 Misc 2d 821; Matter of Hassan v Magistrates Ct. of City of N. Y., 20 Misc 2d 509) and the unique power to decide when a cause will be moved for trial (Matter of Silver v Gassman, 12 Misc 2d 58, affd 6 AD2d *316 694; Matter of McDonald v Goldstein, 191 Misc 863, affd 273 App Div 649). As may be readily perceived in the context of the everyday give and take of the courtroom, these powers encroach on that which would ordinarily be the exclusive province of a court to determine on the one hand, the life of a cause pending before it, and, on the other, the right to manage its own calendar. Because of this interaction, the People’s prerogatives have uniformly been defined by appellate courts within the parameters of confrontation between two systemic powers each seeking their definition in terms of its own self-image (cf. Matter of Silver v Gassman, supra; Matter of McDonald v Goldstein, supra). Even the names of the litigants in the classic cases reflect this fact.[2] Inevitably, a defendant looks on as an interested bystander; he has the least to say as a matter of law.
The People’s prerogative of making the determination as to which cause will be prosecuted was articulated in the common law as the doctrine of nolle prosequi. This inherent power which always belonged to the prosecutor was somewhat diluted in 1849 when a statutory revision was recommended and enacted into law (cf. People v Quill, 11 Misc 2d 512) giving the court the right to exercise it via the procedural device known as a dismissal in the interests of justice (People v Quill, supra; CPL 170.40, 210.40). The power of nolle prosequi whereby the District Attorney declares “I do not choose to prosecute” is mainly exercised in modern usage through an adjournment in contemplation of dismissal. In the adult criminal justice system, the right to consent thereto or to withhold same belongs exclusively to the District Attorney (CPL 170.55). While it is ostensibly true that the People’s discretion not to ACD a case is nonreviewable (People v Cunningham, 106 Misc 2d 326), the court may nevertheless exercise its version of the prerogative of nolle prosequi by dismissing in the interest of justice, thereby achieving the same result (People v *317 Quill, supra; People v Dibono, 82 Misc 2d 177).[3] In this manner, collision between a prosecutor’s prerogatives and the court’s must inevitably be resolved in the court’s favor. Nevertheless, delineation between prosecutor’s and court’s authority being the bottom line, a defendant simply looks on. His rights take root when he is called upon to defend against the underlying charge. In the Family Court, an application for an ACD differs slightly in that it may be on the complainant’s motion (or with his consent), or, if not forthcoming on the part of complainant, by the court on its own motion (Family Ct Act, § 749).[4]
The second of these prosecutor’s prerogatives, the right to move a cause for trial (Matter of McDonald v Goldstein, 191 Misc 863, affd 273 App Div 649, supra) is expressed, subsequent to adjournment in contemplation of dismissal, by a simple vacatur of the ACD, and is counterbalanced by the plenary power of a court over its own calendars and procedures. (People v Wingard, 33 NY2d 192; People v Douglass, NYLJ, July 20,1982, p 5, col 1.) The bottom line is the same: two institutional powers each trying to occupy the same space at the same time, with a defendant again looking on with no status. The issue between these institutions is calendar control. A defendant’s rights attach only when he is called upon to defend on the merits after court and prosecutor have resolved “territorial” issues between them. Neither the decision to offer an ACD in the first instance (People v Cunningham, supra) nor to restore same (Singleton v City of New York, 632 F2d 185) is re viewable. When the People restore a case which had previously been ACD’d, they simply exercise their traditional prerogative of moving a cause for trial (Matter of Silver v Gassman, 12 *318 Misc 2d 58, affd 6 AD2d 694, supra): No right to a hearing accrues to a defendant, nor does he possess standing to contest this action (People v Hurt, 78 Misc 2d 43; People v Goldstein, 79 Misc 2d 996).
In People v Hurt (supra), the Criminal Court refused to grant a hearing to a defendant íaced with restoration of an ACD for trial. The court reasoned first, that CPL 170.55 made restoration mandatory (referring to the word “must” in the statute); second, that a defendant in whose favor a prosecutor’s determination had been made was the recipient of a privilege revocable at will. Commenting on defendant’s asserted claim to a generally mandated constitutional right to hearing, the court stated (78 Misc 2d 43, 47-48, supra): “In determining whether a violation of defendant’s constitutional rights exists, the question is not merely the weight of the individual’s interest, but whether the nature of the interest is one within the contemplation of the liberty or property language of the Fourteenth Amendment. (Fuentes v. Shevin, 407 U.S. 67.) Whether any procedural safeguards are due depends on the extent to which an individual would be condemned to suffer grievous loss. (Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123.) It does not appear that by vacating the ACD and restoring the case to the calendar, any substantial interest of the defendant is affected. Nor does it appear such action would bring about any grievous loss in violation of defendant’s Fourteenth Amendment rights.”
People v Hurt {supra) was held to be controlling by our learned colleague, the Honorable Benjamin E. Lander in People v Goldstein (79 Misc 2d 996, supra). In that case, Judge Lander pointed out that the ruling in People v Hurt (supra) as to the nonavailability of a hearing prior to vacatur of an ACD was based not only upon the Legislature’s use of the word “must” in CPL 170.55 but also on defendant’s failure to establish any constitutional right thereto. In commenting on this so-called “constitutional” right, Judge Lander wrote (79 Misc 2d 996, 998, supra): “Further * * * the defendant is not entitled to a prior hearing on the issue, since by vacating the adjournment in contemplation of dismissal (ACD) and restoring the case, *319 no substantial interest of the defendant is affected, nor is there any violation of his Fourteenth Amendment rights.”
STATUTORY AMENDMENT:
In 1980 (L 1980, ch 24), CPL 170.55 was amended with regard to restoration of ACDs by changing the word “must” to “may” and by adding language whereby the applicable provision now reads: “Upon application of the people, made at any time not more than six months after the issuance of such order, the court may restore the case to the calendar, upon a determination that dismissal of the accusatory instrument would not be in furtherance of justice, and the action must thereupon proceed.”
By enacting this amendment, the Legislature brought CPL 170.55 into substantial conformity with section 749 of the Family Court Act.[5] While it may be argued that change of the word “must” to “may” now entitles a defendant to a hearing, this view overlooks the more important underpinning of Hurt and Goldstein to the effect that no constitutional right is involved where the People simply seek to assert their inherent prerogative of bringing a defendant to trial. In rescinding their gift to a defendant, he is simply pláced in a position of putting the People to their proof and is in no way prejudiced (Singleton v City of New York, 632 F2d 185, supra).
It is of particular interest that the amended statute was coupled with the establishment of a dispute-resolution procedure whereby petty disagreements (technical crimes pitting neighbor against neighbor; nuisance litigation involving death-rays and other paranoid esotérica, etc.) were diverted from the criminal justice system via an ACD and referral for dispute-resolution. In that event, ACDs traditionally were tied to a condition requiring compliance with an arbitrator’s decision. Recognizing that prosecutors were sometimes carried away with their own zeal in pressing these de minimis matters even after arbitration when a real or imagined breach of the negotiated settlement was claimed, the Legislature mandated that they first solicit *320 and receive consent from the court to restore an ACD’d case. This consent is logically strictly between prosecutor and court involving the contested zone of their respective authority, with no right of a defendant being in any way affected (Bellacosa, Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, Supplementary Pamphlet [1972-1981], CPL 170.55, pp 35-37). The requirement that a prosecutor obtain court approval for restoration of an ACD’d cause is simply an affirmation of the court’s prerogative, superior to that of the prosecutor, not to have its calendars clogged by nuisance litigation, the wisdom of which may be a source of disagreement between court and District Attorney. Recognition of the fact that there is no right to a hearing (Bellacosa, op. cit., p 37) is a matter of day-to-day practice in the criminal courts. For some reason, a certain mystique has attached to these proceedings in the Family Court wherein hearings are routinely demanded and often granted. We find no statutory or stare decisis basis for this practice. This so-called “right” to a hearing which seems to have grown like Topsy can no more assume legitimate genesis by repetition than can any other unsanctioned ad hoc procedure. It simply does not exist either under the Criminal Procedure Law or under the Family Court Act both of which now contain similar provisions. Recognition of this fact may additionally be found in the official form of application to vacate adjournment in contemplation of dismissal promulgated by the Office of Court Administration (Form No. 7-10, Sept., 1981; Family Ct Act, § 749) which contains the standard “no previous application” allegation supporting an ex parte application as required by CPLR 2217 (subd [b]).
The defense objection is therefore duly noted and overruled. The ACD is vacated without hearing. The matter shall proceed to dispositional hearing in due course.

. The Honorable Edward S. Silver, former Surrogate of Kings County, was at the time of the litigation in question, District Attorney of Kings County. The Honorable Benjamin Gassman was a Judge of the Court of Special Sessions, subsequently merged into the Criminal Court of the City of New York. The Honorable Miles F. McDonald, later Administrative Judge of the Supreme Court, Kings County, was District Attorney of that county at the time of this litigation. The Honorable Louis Goldstein was a Judge of the County Court, since merged into the Criminal Term of the Supreme Court.

. We do not feel it in order to cite our own decision in People v James (98 Misc 2d 755), to similar effect, but feel it appropriate to point out that said decision was subsequently cited as authority for the holdings in People v Joseph P. (106 Misc 2d 1075) and People v Boyer (105 Misc 2d 877).
Of course, there is substantial authority for the proposition that dismissal in the interests of justice is not to be used as a device for overruling the People’s unreasonable refusal to ACD a case, all of which was discussed in People v James. As was pointed out there, the differences between these respective lines of authority is one of degree rather than conceptual. As with all yardsticks in the law, a rule of reason always applies.

. It is reasonable to argue that because the court possesses this power in the Family Court, a motion to dismiss in the interests of justice is inappropriate in the Family Court. The undersigned and many of his colleagues have in fact so held from the Bench on several occasions.

. Of course, the court’s prerogative to ACD where the People refuse to do so is always assumed as the most basic difference in the two statutes.