OPINION OF THE COURT
Lorraine S. Miller, J.
This case poses the poignant problem that deeply troubles every member of the judiciary in the criminal justice system today: what to do with indigent defendants who fail to pay fines previously imposed by the court.
While this is but one aspect of the “crisis of the courts” commented upon by Chief Judge Lawrence Cooke in a recent address,[1] the frequency of such cases nevertheless significantly contribute to the “beleaguered” condition of the “conventional forum for dispute resolution, the court.”
Defendant herein pleaded guilty to attempted criminal mischief, fourth degree, and on October 10, 1980, was sentenced to a conditional discharge and a fine of $250. He was brought before this court on a warrant when the fine remained unpaid and the People requested incarceration. On February 19, 1981, this court held a hearing, during which defendant testified, without contradiction, that he is married, has seven young children and has been unem *743 ployed many months. The defendant was found to be indigent at the conclusion of the hearing.
Defendant now seeks either total revocation of the fine pursuant to CPL 420.10 (subd 4, par [c]), and/or not to be resentenced to the possible prison term authorized under CPL 420.10 (subd 4, par [d]).
While the court docket is not clear whether the sentencing court in October, 1980 had imposed a conditional discharge plus an independent fine or whether the fine was made a term of the conditional discharge, this court holds in either instance that although the fine cannot be vacated under the facts herein, this defendant cannot be resentenced to a term of imprisonment for nonpayment of the fine.
The statutory imposition of a fine can be found in Anglo-Saxon law as far back as 1383.[2] A term of incarceration for nonpayment of the fine is authorized currently by Federal statute and in every State.[3] Imprisonment under these circumstances is traditionally justified as being only a coercive device to insure payment — not a substitute form of punishment.[4] Decisions of the Supreme Court of the United States, the New York State Court of Appeals and courts of other jurisdictions have begun to increasingly suggest that when the court is satisfied that payment is impossible by an indigent defendant, the possible justification for imprisonment as a persuasive collection device no longer exists.
The first pronouncement in this area came in Griffin v Illinois[5] wherein convicted defendants were unable to appeal because of inability to pay for certified copies of the trial record. The Supreme Court held that the State’s failure to provide transcripts at public expense for appellate review constituted an invidious discrimination based *744 on wealth. The court noted: “[Tjhere can be no equal justice where the kind of trial a man gets depends on the amount of money he has.”[6]
New York followed the Federal court’s cue several years later (1965). In People v Saffore,[7] the Court of Appeals reversed a lower court ruling which had required an indigent defendant to serve one year in jail and pay a $500 fine which, if unpaid, would be served at a rate of a day in jail for each unpaid dollar. Defendant’s right to equal protection was held to be violated when the term of imprisonment for the crime plus the additional term imposed for nonpayment exceeded the statutory maximum term of imprisonment.
In 1970 the Supreme Court in Williams v Illinois[8] again found a violation of equal protection when the aggregate term of imprisonment for an indigent who was required to work off his unpaid fine exceeded the maximum term of imprisonment imposed by the statute for the underlying crime. Mr. Justice White in Morris v Schoonfield,[9] decided the same day as Williams, stated in a concurring opinion as follows: “In each case, the Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full.”
The following year the Supreme Court further restricted the imprisonment of indigents for inability to make immediate payment of fines. In Tate v Short,[10] the defendant had accumulated $425 for nine traffic offenses, payable by fine only. Because he was indigent, Tate was unable to pay the fines. Under Texas statutes he was resentencid to imprisonment for 85 days at $5 per day as a substitute sentence. Habeas corpus relief was denied by the Texas courts. The Supreme Court reversed and remanded, finding imprisonment violative of the equal protection clause of the Fourteenth Amendment to the Constitution. Mr. Justice Brennan, citing Williams, stated (pp 397-398): *745 “Although the instant case involves offenses punishable by fines only, petitioner’s imprisonment for nonpayment constitutes precisely the same unconstitutional discrimination since, like Williams, petitioner was subjected to imprisonment solely because of his indigency.”
STATUTORY PROVISIONS IN NEW YORK
CPL 420.10[11] provides:
“4. Application for resentence. In any case where the defendant is unable .to pay a fine * * * imposed by the court, he may at any time apply to the court for resentence. In such case, if the court is satisfied that the defendant is unable to pay the fine * * * it must:
“(a) Adjust the terms of payment; or
“(b) Lower the amount of the fine *** or
“(c) Where the sentence consists of probation or imprisonment and a fine *** revoke the portion of the sentence imposing the fine *** or
“(d) Revoke the entire sentence imposed and resentence the defendant. Upon such resentence the court may impose any sentence it originally could have imposed, except that the amount of any fine * * * imposed may not be in excess of the amount the defendant is able to pay.”
Preiser, in the Practice Commentary to CPL 420.10, notes that the 1970 New York statute is even more restrictive vis-a-vis the court’s ability to incarcerate indigents than Saffore, Williams and Tate. He explains that while Saffore and Williams are limited to cases where the term of imprisonment plus the jail term imposed for nonpayment of the fine exceeded the authorized term imposed by the statute, “[subdivision 4 applies to any case where the defendant is unable to pay the fine.” (Preiser, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 420.10, p 165.) And, regarding the effect of the Tate decision on CPL 420.10 (subd 4), he states “This will not require any change in New York procedure as subdivision 4 of CPL Section 420.10 already prohibits imprisonment of an indigent for failure to pay a fine. In fact, subdivision 4 imposes a greater restriction than the opinion in Tate v. *746 Short, supra, because in Tate the Court limited its holding to cases where the indigent does not make immediate payment”. (Ibid.; emphasis supplied.)
(I) As hereinbefore stated, within defendant first seeks total revocation of the fine pursuant to CPL 420.10 (subd 4, par [c]) which applies where the original sentence is probation plus a fine or imprisonment plus a fine. Defendant argues in his memorandum of law that this court should extend CPL 420.10 (subd 4, par [c]) and hold that his sentence of a conditional discharge plus a fine comes under the umbrella of paragraph (c) of subdivision 4. Although there has been no memorandum in opposition by the District Attorney’s office, this court must hold that rules of statutory construction and case law militate against the adoption of defendant’s position in this regard. Since paragraph (c) specifically enumerates probation plus a fine and imprisonment plus a fine, but omits a conditional discharge plus a fine, the court is bound by the rule of construction of “expressio unius est exclusio alterius”. This maxim has long created an irrefutable inference that what is omitted or not included in an enumerated list was intended to be omitted or excluded fact. (McKinney’s Cons Laws of NY, Book 1, Statutes, §240.) Thus CPL 420.10 (subd 4, par [c]) does not assist this defendant since his original sentence does not come under either of the two specifically enumerated.
(II) Defendant’s second argument is that the application of CPL 420.10 (subd 4, par [d]) would be constitutionally impermissible. That section provides, inter alia, for resentence to the original sentence. Defendant correctly points out the curious nature of this provision which apparently permits a harsher prison sentence (three months for a class B misdemeanor — Penal Law, §70.15) than the sentence originally imposed (conditional discharge and a fine), not because defendant is unwilling to pay but because he is unable to do so! While this may be a proper sanction for a recalcitrant, moneyed defendant who refuses to pay, it smacks of invidious discrimination based on economic status when applied to an impecunious defendant. The dilemma was succinctly stated by a sister State in the *747 California case of Matter of Antazo.[12] The court said: “Proper use of imprisonment as a coercive mechanism presupposes an ability to pay and a contumacious offender. In the instant case we deal with the application of the practice to indigents *** [and as] applied to indigents we fail to see how either the threat or the actuality of imprisonment can force a man without funds, to pay a fine.”
Thus, while a CPL 420.10 (subd 4, par [d]) resentence of incarceration is different in form from a jail sentence for failure to pay a fine, the result still contravenes the mandate that “[ejqual protection guarantees forbid discrimination based on proverty.”[13]
In the recent case of People v Maas,[14] the court questioned the constitutional validity of CPL 420.10 (subd 4, par [d]) as had Justice Shapiro in People v Sherman.[15] Noting that CPL 420.10 (subd 3) allows for the imprisonment of a defaulting defendant to one third of the maximum authorized sentence until the fine is paid in misdemeanor cases and CPL 420.10 (subd 4, par [d]) allows for the imposition of the original sentence, the Maas court remarked: “if a court be limited to the alternatives set forth in the Criminal Procedure Law, as outlined above, there arises a clear possibility of a constitutional defect, since then an indigent would be subject to a longer sentence upon failure to pay a fine than a non-indigent but willfully defaulting defendant.” (NYLJ, Nov. 21, 1980, p 7, col 2.)
Thus, applying the original sentence to a truly impoverished defendant because he is without means to satisfy the fine clearly results in a poorly disguised, back-door method of circumventing the indigent’s right to equal protection.
*748 Another subdivision of CPL 420.10 also indicates the inconsistent and incongruous nature of the various subdivisions of 420.10 generally.
CPL 420.10 (subd 2) was amended in 1980 to read in pertinent part: “Where a sentence provides that the defendant be imprisoned for failure to pay a fine, the court shall advise the defendant that if he is unable to pay such fine, he has a right, at any time, to apply to the court to be resentenced as provided in subdivision four of this section.”[16]
The Supplementary Practice Commentary to this new amendment of subdivision 2 is particularly instructive for it mandates that the sentencing court advise a defendant about to be resentenced to prison under paragraph (d) of subdivision 4 for failure to pay a fine that he has an absolute right to the other ameliorative sentencing schemes of 420.10. It further states that “The Office of Court Administration proposed this legislation as an additional safeguard especially for indigent defendants who may * * * have no awareness of the available sentencing alternatives.”[17] Thus the Legislature and Office of Court Administration saw the necessity of informing the indigent defendant of his right to be resentenced prior to the possible imposition of a term of imprisonment for failure to pay the fine. This court construes the newly amended subdivision 2 as tacit legislative recognition of the possible unconstitutionality of imprisoning an indigent defendant and permitting him alternatives. In this court’s opinion, the availability of such alternatives does not cure invalidity of a prison sentence under paragraph (d) of subdivision 4. It is manifest that by belatedly incarcerating the indigent for nonpayment, the State adds to the already staggering overpopulation of the prisons and the costs of warehousing persons who initially were not to be sanctioned by prison. From a coercive monetary measure, therefore, incarceration suddenly becomes the punishment in chief, an *749 anomalous result that has been criticized by a recent American Bar Association study.[18]
The conditional discharge granted by the sentencing court pursuant to section 65.05 of the Penal Law (in addition to the fine) reflected that court’s determination under that statutory criteria therein that, neither the public interest nor the ends of justice would be served by a sentence of imprisonment for this defendant. Resentencing defendant now to the original term of incarceration pursuant to CPL 420.10 (subd 4, par [d]), because of clear financial inability to pay $250, would not only be legally inequitable, constitutionally impermissible, and socially undesirable, but would be tantamount to this court sitting as an appellate court on the judgment of the sentencing Judge.
This court is painfully mindful that by holding imprisonment invalid and revocation of the entire fine unauthorized it is limited to adjusting the terms of payment (CPL 420.10, subd 4, par [a]) or lowering the amount of the fine (CPL 420.10, subd 4, par [b]) as in the Sherman case (43 AD2d 575, supra). These are not satisfactory solutions: indigency may prevent payment of any amount and every adjournment for staggered $10 payments (or none at all) only adds to the already enormous case load of each of the Criminal Court Parts which have become virtual “bill collectors” for as many as 15 to 30 fine cases daily in addition to the regular calendars of 50 cases or more.
Because of the paucity of options available to this court, however, it has no other viable alternative under existing law but to resentence this defendant to a conditional discharge plus a $50 fine separate and apart therefrom to be paid by May 25, 1982.
Chief Judge Cooke in his address, supra, pointed to the need for “alternatives” to protect the viability of the judi *750 cial system. The historic practice of imprisoning defendants for nonpayment of fines would appear to be anachronistic, unconstitutional, costly, and an area suitable for realistic alternatives. It is therefore respectfully urged that the current 1981 legislative session specifically address this problem since the current condition of our calendars and prison facilities mandate that judicial and correctional time be spent on the serious transgressions plaguing our society.

. The Charles Evan Hughes Memorial Lecture to the NY County Lawyers’ Assn. NYLJ, March 20, 1981, p 1, col 4.

. The act of 1383 provided that an “officer of the forest” could imprison an individual after obtaining an indictment and the defendant could “buy” his freedom by paying a fine and ransom to the sovereign. Even prior thereto, the practice employed from the time of William the Conqueror was to allow a prisoner to “make fine”, by the payment of money to the King. See Fines Imprisonment, and the Poor: “Thirty Dollars or Thirty Days”, 57 Cal L Rev 778, 783-787, and authorities cited therein.

. US Code, tit 18, § 3656; see the appendix to Williams v Illinois, 399 US 235, 246-259, for State statutes authorizing the impositions of fines.

. See People v Saffore, 18 NY2d 101, 103; Matter of McKinney v Hamilton, 282 NY 393.

. 351 US 12.

. Supra, at p 19.

. 18 NY2d 101, supra.

. 399 US 235, supra.

. 399 US 508, 509.

. 401 US 395.

. L 1970, ch 996, eff Sept. 1, 1971.

. 3 Cal 3d 100, 114.

. People v Cunningham, 106 Misc 2d 326, 328, citing State v Gerard, 57 Wis 2d 611; People v Collins, 47 Misc 2d 210; Matter of Antazo, 3 Cal 3d 100, supra.
The New York Practice Commentary to CPL 420.10 (subd 4, par [d]) also reflects this position: “Where an indigent applies for resentence because he cannot pay a fine and the court obliges by revoking the sentence and simultaneously imposing a definite term of imprisonment, the court then still is sentencing a poor person to incarceration in circumstances where he would not have been so sentenced had he been wealthy.” Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 420.10, pp 165-166.

. NYLJ, Nov. 21, 1980, p 7, col 1.

. 43 AD2d 575, revd 35 NY2d 931, remitted 49 AD2d 929.

. L 1980, ch 584, eff July 26, 1980.

. Bellaeosa, Supplementary Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 420.10,"p 86, 1980-1981 Pocket Part.

. See ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Sentencing Alternatives and Procedures, §2.7, subd [b], Commentary (1968). A review of the study has led a commentator to note that incarceration for failure to pay a fine: “(B)rings the offender into association with convicted felons, possibly promoting future crime, and that it prevents an offender from earning money, the lack of which caused him or her to be detained in the first place. Also, dependents of the defendant suffer. Finally, imprisonment occurs despite an initial determination that such imprisonment was not a proper sanction.”
See Note, Criminal Procedure — The Use of the Fine as a Criminal Sanction in New Jersey: Some Suggested Improvements, 28 Rutgers L Rev 1185.